# United States Court of Appeals

## FOR THE EIGHTH CIRCUIT

_____

No. 00-3776

_____

Roger D. Speer,                              *
                                             *
            Appellee,                        *
                                             *
      v.                                     *
                                             *
City of Wynne, Arkansas,                     *
                                             *
            Appellant.                       *

_____                              Appeals from the United States
                                             District Court for the
No. 00-3777                                  Eastern District of Arkansas.

_____

Roger D. Speer,                              *
                                             *
            Appellant,                       *
                                             *
      v.                                     *
                                             *
Danny Glover, Individually and as            *
Deputy Prosecuting Attorney,                 *
                                             *
            Appellee.                        *

_____

Submitted: September 14, 2001

Filed: January 14, 2002

_____

Before MCMILLIAN, BEAM, and HANSEN, Circuit Judges.
_____


HANSEN, Circuit Judge.

Roger D. Speer filed this action pursuant to 42 U.S.C. § 1983, alleging that the City of Wynne, Arkansas (City), the City's mayor, James Green, and Deputy Prosecuting Attorney Danny Glover violated his procedural due process right to a name-clearing hearing. The district court granted summary judgment to Prosecutor Glover and, following a bench trial, entered judgment against the City but in favor of Mayor Green. The City appeals the district court's judgment in favor of Speer, and Speer cross-appeals the district court's grant of summary judgment to the deputy prosecutor. We affirm in part, reverse in part, and remand for further findings of fact and conclusions of law.


I.


The material facts are not in dispute. Lieutenant Speer was a long-time police officer in the Wynne Police Department in Cross County, Arkansas. During a 1996 investigation into charges that the Cross County Sheriff's Department was misusing prisoners, Susan Combs, a Cross County jail detainee, alleged that Lieutenant Speer had engaged in sexual acts with detainees in exchange for favors such as reduced jail time and reduced fines. Deputy Prosecutor Glover learned of the allegations against Speer and asked the Arkansas state police to conduct an investigation into them. During the ensuing investigation, Denise Hill similarly reported that Lieutenant Speer had sex with Combs and Christy Hubbard, another Cross County jail detainee, in exchange for various favors. Ms. Hill also alleged that Lieutenant Speer had propositioned her for sex in exchange for her early release from jail.

2

Mayor Green, Police Chief Lynne Rodgers, Prosecuting Attorney Fletcher Long, and Deputy Prosecutor Glover, held a meeting on April 17, 1997, to discuss the allegations against Lieutenant Speer and the completed investigation. Long and Glover informed the city officials that they would not prosecute Lieutenant Speer for various reasons. The group then discussed the appropriate employment action to be taken against Lieutenant Speer. Chief Rodgers reluctantly terminated Speer's employment with the department later that same day.

After Speer's discharge, a reporter with the Arkansas Democrat-Gazette newspaper contacted both Mayor Green and Deputy Prosecutor Glover to discuss the investigation and the employment action taken against Speer. The following article was published in the April 19, 1997, edition of the Arkansas Democrat-Gazette.

**Wynne Officer out, won't face charges from investigation**

By Sandy Davis
Arkansas Democrat-Gazette

WYNNE – A Wynne policeman was fired this week over allegations of sexual misconduct while on the job, Deputy Prosecuting Attorney Danny Glover said.

Glover said that he and Prosecuting Attorney Fletcher Long of Forrest City recommended to city officials that Lt. Roger Speer, a criminal investigator with the department, be fired after they reviewed the results of an Arkansas State Police criminal investigation.

Glover said the allegations against Speer concern the officer trading sex with female suspects for favors. He said at least one of the females was an inmate in the county jail.

"Mr. Long and I looked at filing criminal charges against him, but in the end we decided we couldn't," Glover said. "So, our recommendation was to tell the city to handle it. Our preference was that he be fired."

Glover said there were three allegations that were investigated.

"One of them we didn't feel

3

like was a crime," Glover said of why no charges were filed. "Another one, we believed the statute of limitations had expired, and on the third one, it was one of those where we questioned whether we could meet our burden of proof. The victim's credibility could be questioned because of her extensive criminal history."

Glover said the investigation into the department was continuing.

"Until then, I'm not going to comment on the specifics," he said.

Glover said he had provided Wynne Police Chief Lynn Rodgers with a copy of the investigative file.

Rodgers could not be reached for comment on Friday.

Wynne Mayor Bud Green said Friday that Speer was fired Thursday.

"As I understand it, the investigation is over with," he said. "I looked at the investigative file and Speer was the only one they were looking at."

Green, who has been mayor two years, said he did not know how long Speer had been a police officer.

"The allegations against him were not from recent events," Green said. "As I understand it, they all happened some time ago. They all happened long before I was mayor."

(J.A. at 199.)

Speer filed this § 1983 action less than a week after the article appeared in the newspaper. He claimed that the City, Mayor Green, and Glover violated his procedural due process rights by terminating his employment without affording him an opportunity to contest the allegations against him at a hearing. The district court thereafter granted summary judgment to Glover on the basis that Glover had no employment relationship with Speer. Speer's remaining claims were tried to the district court in a bench trial.

4

Ms. Hill testified during the trial and, to the apparent surprise of the parties, recanted her earlier allegations against Speer. Ms. Hill testified that the sheriff's wife approached her in jail and promised an early release from jail if Ms. Hill made the false accusations against Speer. According to Ms. Hill, the sheriff and his wife wanted to have Speer fired from the police department, and Ms. Hill's false allegations were intended to support the allegations first made by Ms. Combs. Ms. Hubbard also testified and denied that Speer ever asked her to engage in sex in exchange for favors. As a final blow to the defendants, City Police Chief Michael Miller, Chief Rodgers' successor, testified that Ms. Combs demanded that she be released from jail and relieved from fines she owed the City or she would refuse to testify on behalf of the City. Chief Miller further testified that Ms. Combs was subsequently released from jail, that her fines were waived, and that he feared his testimony would cost him his job. The district court later reopened the evidence to reflect that the City terminated Chief Miller's employment twelve days after his testimony.[1]

In light of the trial testimony, the City conceded to the district court that the allegations against Speer all had been false. The district court subsequently issued judgment against the City, concluding in its written findings that Speer was entitled to a hearing to contest the tarnishing allegations that Mayor Green made public in the newspaper article. The district court did not discuss Speer's due process claim against Mayor Green but entered judgment in the Mayor's favor.

---

[1]Chief Miller has filed a lawsuit alleging that he was fired in retaliation for testifying against the City.

5

II.

A.

An at-will, public employee generally has no protected liberty interest in continued employment which would obligate a state employer to provide some form of a hearing in connection with the employee's discharge. See Bishop v. Wood, 426 U.S. 341, 348 (1976). An exception to this general rule exists where a state employer creates and disseminates a false and defamatory impression about the at-will employee in connection with the discharge. The Supreme Court has recognized in such situations that the Constitution's procedural due process protections require the employer to provide the employee with an opportunity to dispute the defamatory allegations in what is commonly referred to as a name-clearing hearing. Codd v. Velger, 429 U.S. 624, 627-28 (1977); Singleton v. Cecil, 176 F.3d 419, 427 (8th Cir.) (en banc), cert. denied, 528 U.S. 966 (1999). The right to a name-clearing hearing protects the employee's liberty interest in his or her good name and reputation, and it prevents a public employer from depriving an employee of that interest without due process. See Merritt v. Reed, 120 F.3d 124, 126 (8th Cir. 1997). A public employee must make a three-part showing to establish the deprivation of a liberty interest in his good name: 1) the public employer's reasons for the discharge stigmatized the employee by seriously damaging his standing and association in the community or by foreclosing employment opportunities that may otherwise have been available; 2) the public employer made the reason or reasons public; and 3) the employee denied the charges that led to the employee's firing. See Coleman v. Reed 147 F.3d 751, 754-55 (8th Cir. 1998); Merritt, 120 F.3d at 126; Waddell v. Forney, 108 F.3d 889, 895-96 (8th Cir. 1997).

The City argues the district court erred in holding it liable for a violation of Speer's due process right to a name-clearing hearing for two reasons. First, the City argues Speer failed to show that Mayor Green made the reasons for his discharge public. The City argues alternatively that it cannot be subject to municipal liability

6

under § 1983 because the district court made no underlying finding that Mayor Green violated Speer's constitutional rights. In an appeal from a judgment following a bench trial, our review of the district court's factual findings is limited to clear error. Santucci v. Allstate Life Ins. Co., 221 F.3d 1045, 1047 (8th Cir. 2000). We review de novo the district court's conclusions of law. Id.

The requisite dissemination triggering the right to a name-clearing hearing occurs where the public employer makes stigmatizing allegations, in connection with the employee's discharge, "in any official or intentional manner." In re Selcraig, 705 F.2d 789, 796 n.6 (5th Cir. 1983) (internal quotations omitted). The City argues that the statements attributed to Mayor Green in the article did not identify the nature of the allegations against Speer and that the article is therefore insufficient to support the district court's finding that Mayor Green made the discharge reasons public. According to the City, the comments attributed to Glover in the article disclosed the nature of the investigation, and Glover's statements cannot be attributed to the City because Glover is a state prosecuting attorney, and not a city employee. See Merritt, 120 F.3d at 126 (concluding that summary judgment should have been granted where publication was not attributable to any of the employer's employees). The City relies too heavily on the journalistic whims of the article's author in attributing statements to either Mayor Green or Glover rather than on the impression that Mayor Green conveyed to the reporter and anyone who would have read the article. It is clear that Mayor Green willingly discussed the allegations against Speer with a reporter, someone whom one would logically expect to publicize what one tells them. The article also indicates that Mayor Green confirmed that Speer had been discharged and that there was, or had been, an investigation into the matters the reporter had discussed with Glover. Based on these facts alone, the district court did not commit clear error in concluding that Mayor Green disseminated a false impression of Speer in connection with his discharge. Cf. Winegar v. Des Moines Indep. Cmty. Sch., 20 F.3d 895, 899 n.3 (8th Cir.) (finding publication element satisfied where outside

investigator was hired and students were interviewed during investigation into allegations against a teacher), cert. denied, 513 U.S. 964 (1994).

The next question is whether a sufficient basis exists to support the district court's decision to impose municipal liability. Relying on Los Angeles v. Heller, 475 U.S. 796 (1986), the City suggests that we must reverse because the district court failed to find that Mayor Green was individually liable for a violation of Speer's constitutional rights. In Heller, the plaintiff brought a § 1983 suit against a police officer, the police commission (the officer's employer), and the city. The plaintiff alleged that he was arrested without probable cause and that the officer used excessive force in making the arrest. The jury returned a verdict in favor of the officer, and the district court then dismissed the municipal defendants. The Supreme Court upheld the dismissal in a per curiam decision, reasoning that the municipal defendants' alleged liability stemmed from their legal responsibility for the officer's conduct and that a finding that the officer's conduct was not unconstitutional obviated any possibility that the municipal defendants were subject to liability. Id. at 799 ("If a person has suffered no constitutional injury at the hands of the individual police officer, the fact that the departmental regulations might have authorized the use of constitutionally excessive force is quite beside the point.").

Our court has previously rejected the argument that Heller establishes a rule that there must be a finding that a municipal employee is liable in his individual capacity as a predicate to municipal liability. See Praprotnik v. City of St. Louis, 798 F.2d 1168, 1172-73 n.3 (8th Cir. 1986), rev'd on other grounds, 485 U.S. 112 (1988); see also Parrish v. Luckie, 963 F.2d 201, 207 (8th Cir. 1992) ("A public entity or supervisory official may be liable under § 1983, even though no government individuals were personally liable."). As our court noted in Praprotnik, a crucial fact underlying the Supreme Court's decision in Heller was that the theory of municipal liability asserted was entirely dependent on the municipal defendants' responsibility for the officer's alleged unconstitutional acts. See Praprotnik, 798 F.2d at 1173 n.3.

8

A favorable verdict for the individual officer, therefore, would have been entirely inconsistent with a finding that the municipal defendants were responsible for the unconstitutional behavior.[2] Heller should not be read to require a plaintiff to show more than that a governmental policy or custom was the "moving force" that led to the deprivation of his constitutional rights, the foundation for municipal liability recognized by the Court in Monnell v. Dep't of Soc. Servs., 436 U.S. 658, 694 (1978).

The appropriate question under Heller is whether a verdict or decision exonerating the individual governmental actors can be harmonized with a concomitant verdict or decision imposing liability on the municipal entity. The outcome of the inquiry depends on the nature of the constitutional violation alleged, the theory of municipal liability asserted by the plaintiff, and the defenses set forth by the individual actors. We do not suggest that municipal liability may be sustained where there has been no violation of the plaintiff's constitutional rights as a result of action by the municipality's officials or employees. Cf. Trigalet v. City of Tulsa, 239 F.3d 1150, 1156 (10th Cir. 2001) (concluding that a municipality may be held liable only if the conduct of its employees directly caused a violation of a plaintiff's constitutional rights); Schulz v. Long, 44 F.3d 643, 650 (8th Cir. 1995) ("It is the law in this circuit . . . that a municipality may not be held liable on a failure to train theory unless an underlying Constitutional violation is located."). After all, a municipality

_____

[2]Commentators also have suggested that Heller does not stand for the broad proposition that personal liability is a prerequisite to municipal liability. See Barbara Kritchevsky, Making Sense of State of Mind: Determining Responsibility in Section 1983 Municipal Liability Litigation, 60 Geo. Wash. L. Rev. 417, 454 (1992) ("Heller is best viewed as a case in which the Supreme Court struck what it considered an inconsistent jury verdict and did not seek to establish any new principle of municipal liability law."); Martin A. Schwartz & John E. Kirklin, Section 1983 Litigation: Claims, Defenses, and Fees § 7.6 (2d ed. 1991) ("Heller . . . should not be read as announcing a broad rule requiring dismissal of the claim against the municipality in every case in which it is found that the defendant officer was not a constitutional violator.").

can act only through its officials and employees. However, situations may arise where the combined actions of multiple officials or employees may give rise to a constitutional violation, supporting municipal liability, but where no one individual's actions are sufficient to establish personal liability for the violation. See Garcia v. Salt Lake County, 768 F.2d 303, 310 (10th Cir. 1985); see also De Feliciano v. De Jesus, 873 F.2d 447, 450 (1st Cir.) (recognizing that a jury's verdict exonerating individual defendants for unconstitutional termination of a plaintiff's employment may be reconcilable with a verdict holding the municipal entity liable for the violation), cert. denied, 493 U.S. 850 (1989).

The district court's decision to impose liability on the City here is potentially reconcilable with its judgment in favor of Mayor Green. The district court found that Mayor Green publicized the allegations against Speer, but the constitutional violation accrues only when an employee is denied the opportunity to clear his name. It is possible, for instance, that the district court relied on the fact that some other city official or officials with final employment-policymaking authority (such as the city council) refused Speer the opportunity to clear his name. If so, Mayor Green's conduct would have been insufficient to support individual liability, yet the City would be liable for the act of its policymaker who did deny Speer that opportunity. Municipal liability may attach based on the single act or decision of a municipal decisionmaker if the decisionmaker possesses final authority to establish municipal policy over the subject matter in question. See City of St. Louis v. Praprotnik, 485 U.S. 112, 123 (1988). It may also be possible that the district court found that a final policymaker ratified the decision to discharge Speer without a hearing, which could also form the basis for municipal liability. See id. at 127 ("If the authorized policymakers approve a subordinate's decision and the basis for it, their ratification would be chargeable to the municipality because their decision is final.").

Because the district court did not make findings concerning which City policymakers violated Speer's rights and did not make specific conclusions of law

concerning the theory of municipal liability supporting its judgment against the City, we cannot say with any certainty that the court's decisions can or cannot be harmonized. We therefore find it necessary to remand this case to the district court to make specific findings of fact and conclusions of law explaining the basis for the City's liability and explaining the basis for Mayor Green's dismissal. See Boatmen's First Nat'l Bank v. Kansas Pub. Employees Ret. Sys., 57 F.3d 638, 640 n.5 (8th Cir. 1995). ("Appellate review absent specific findings and conclusions from the district court may proceed only when (1) the record itself sufficiently informs the court of the basis for the trial court's decision on the material issues, or (2) the contentions raised on appeal do not turn on findings of fact." (quotations omitted)). On remand, the district court should specifically determine who denied Speer the opportunity to clear his name and whether that person had final policymaking authority over City employment decisions.[3]

## B.

Speer cross-appeals the district court's grant of summary judgment in favor of Glover. Glover moves to dismiss the cross-appeal, arguing that we lack appellate jurisdiction in this case. We agree. The district court issued its order granting summary judgment to Glover on November 25, 1998. In its order, the district court stated, "[p]ursuant to Fed. R. Civ. Pro. 54(b), the Court finds no reason to delay entering judgment for Glover on all claims raised in [Speer's] Complaint; therefore, judgment will be entered accordingly." (Speer's Add. at 5.) The district court issued judgment in favor of Glover the same day, but Speer did not file his notice of appeal until October 16, 2000.

---

[3]The City also argues that the damages awarded to Speer were excessive. In light of our decision to remand for further proceedings, we express no opinion on the validity of the damage award.

11

Generally, an order that adjudicates less than all claims involved in an action does not constitute a final appealable order. See Fed. R. Civ. P. 54(b). Rule 54(b) provides an exception where the district court makes an "express determination" that there is no just reason to delay entering judgment despite the fact that all the claims in the action have not been resolved. Where the district court's intent to enter a partial final judgment under Rule 54(b) is clear, the order is considered appealable. See Kocher v. Dow Chem. Co., 132 F.3d 1225, 1228-29 (8th Cir. 1997). We conclude that the district court expressed a clear intention to enter a partial final judgment on the claim against Glover and did so on November 25, 1998. As a consequence, Speer's notice was untimely under Fed. R. App. P. 4(a)(1)(A) because it was not filed with the district court within 30 days after the district court entered judgment in favor of Glover. Accordingly, we grant Glover's motion to dismiss Speer's cross-appeal for lack of appellate jurisdiction.

## II.

For the reasons stated, we reverse in part and remand for further development of the record and for further proceedings consistent with this opinion in the case against the City, and we dismiss Speer's cross-appeal for lack of jurisdiction.

A true copy.

Attest:

CLERK, U. S. COURT OF APPEALS, EIGHTH CIRCUIT.

12