# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT
_____

No. 01-2961EA
_____

| | | |
|---|---|---|
| Rahman X, also known as Alvin Jackson, | * | |
| | * | |
| Appellant, | * | |
| | * | |
| v. | * | |
| | * | |
| Randall Morgan, Warden, Arkansas Department of Correction; Steve Outlaw, Assistant Warden, Arkansas Department of Correction; J. Apel, Building Captain, Arkansas Department of Correction; J. Barger, Building Lieutenant, Arkansas Department of Corrections; H. Shelton, Field Lieutenant, Arkansas Department of Correction; Charles McIntosh, Classification Officer, Arkansas Department of Correction; H. Lewis, Building Manager, Arkansas Department of Correction; G. Harmon, Warden, Arkansas Department of Correction; G. D. Guntharp, Assistant Director, Arkansas Department of Correction; Larry Norris, Director, Arkansas Department of Correction; and R.E. Wimberly, Chief of Security, Arkansas Department of Correction , | * | On Appeal from the United States District Court for the Eastern District of Arkansas. |
| | * | |
| Appellees. | * | |

_____

Submitted:  August 19, 2002

Filed:  August 27, 2002
_____

Before MORRIS SHEPPARD ARNOLD, RICHARD S. ARNOLD, and FAGG,
  Circuit Judges.
_____

RICHARD S. ARNOLD, Circuit Judge.


   Rahman X brought this lawsuit alleging that he suffered violations of his equal protection, due process, and Eighth Amendment rights when he was placed in a segregation cell for 26 months at the Tucker maximum security facility of the Arkansas Department of Correction.  The District Court[1] conducted a bench trial and then dismissed plaintiff's claims with prejudice.  After review of the arguments in Mr. X's brief, we affirm.


I.


   Rahman X, previously known as Alvin Jackson, was sentenced to death in June 1996 for killing a prison guard.  He accomplished the murder by breaking out of his cell and stabbing the guard with a metal shank.  After his conviction, Mr. X was housed on death row.

   On October 5, 1997, Mr. X made a written request to be assigned to a segregation cell.  These isolation cells are in a separate ward and contain double doors:  an interior barred door and an exterior solid door with a small window.  They

---

[1]The Hon. Henry L. Jones, Jr., United States Magistrate Judge for the Eastern District of Arkansas.  The parties consented to trial before a magistrate judge.

are normally used for less than 30 days to punish prisoners for disciplinary violations. While most of the prisoners are in the segregation cells for "punitive" reasons, the prison officials had informally established an "in-house" classification for prisoners housed in this ward for reasons other than disciplinary infractions. In his request, Mr. X specified that he wanted a particular cell and certain privileges, similar to those granted to another death-row prisoner before his execution.

Around the time of Mr. X's request, the Chief of Security at Tucker prison, Mr. Wimberly, recommended "in-house" placement for Mr. X because he had again tampered with his barred cell door. Although he was not charged with a violation as a result of that incident, on October 31, 1997, the classification committee voted to change Mr. X's housing assignment to "in-house." Normally, prisoners are given written notice of hearings before they are held. The prison officials cannot produce the notice they claim was given to Mr. X, and he denies receiving such a notice, but officials did testify that it was customary to give notice, and that no hearing would have been held if notice had not been given.

At the hearing, Mr. X was allowed to address the committee. He complained that he had not received his choice of segregation cells and that he would not receive certain other requested privileges. The committee rejected his request and classified him as "in-house." Thereafter, Mr. X expressed unhappiness with his housing placement. On October 21, 1998, Mr. X filed a formal grievance requesting that he be released from his segregation cell and returned to a death-row cell. The classification committee met every 60 days but repeatedly voted against returning Mr. X to a death-row cell.

On December 10, 1998, the plaintiff was found in possession of a shank made out of a piece of his barred cell door. He received a 30-day punitive sentence for this violation, which did not result in a change in his housing, since he was already in the segregation ward of the prison. From the expiration of this 30-day sentence on

January 9, 1999, until January 7, 2000, Mr. X remained in "in-house" segregation. He did not commit any disciplinary infractions during this 12-month period. He continued to request that he be released to a death-row cell. Only after the cells on death row were equipped with solid doors, on January 7, 2000, was Mr. X's housing changed.

Mr. X filed this lawsuit in May 1998 pursuant to 42 U.S.C. § 1983. The District Court[2] denied defendants' motion for summary judgment. On May 31, 1998, a bench trial was held before the magistrate judge. The plaintiff was represented by counsel. At the close of Mr. X's evidence, the Court granted judgment as a matter of law to the defendants on Mr. X's equal protection claim. At the conclusion of the trial, the Court found in favor of the defendants and dismissed the due process and Eighth Amendment claims with prejudice. This pro se appeal followed.

II.

Mr. X argues the District Court erred in dismissing his claims. We review the District Court's factual findings for clear error and its legal conclusions de novo. Speer v. City of Wynne, 276 F.3d 980, 984-85 (8th Cir. 2002).

The equal protection claim is without merit. Although plaintiff was treated differently from other death-row inmates, the government's differential treatment will be upheld if there is any rational reason for it. City of New Orleans v. Dukes, 427 U.S. 297, 303 (1976). Mr. X's prior violent assaults and attempts to break out of his cell were a rational basis for housing him in a cell with more secure doors. The Court's grant of judgment as a matter of law for the defendants on this matter is affirmed.

---

[2]The Hon. Stephen M. Reasoner, United States District Judge for the Eastern District of Arkansas, adopting the findings and recommendations of Judge Jones.

Mr. X also raises a due-process claim. To prevail on such a claim based on prison housing, an inmate must show that the segregation created an "atypical and significant hardship on [him] in relation to the ordinary incidents of prison life" to demonstrate that his liberty interest was curtailed. Sandin v. Conner, 515 U.S. 472, 484 (1995). Mr. X cannot meet this standard. Although the length of time he was kept in a segregation cell was substantial, he was not subject to the hardships that prisoners placed in that ward for punitive reasons face. For example, he was allowed out of his cell for recreation for three hours per week, the same amount of time that prisoners housed in death-row cells were allowed, whereas this privilege was not available to prisoners on punitive status. The main hardship that Mr. X seems to identify that he suffered that inmates housed on death-row did not was an inability to watch television in his cell. This is not a significant hardship, even when combined with the other minor deprivations Mr. X alleges.

Even if plaintiff could show that his deprivation rose to the necessary level, his claim would fail because he was given sufficient process by the prison officials. Plaintiff claims he did not receive a written notice of the hearing to change his housing placement. Since he requested the hearing, however, he had notice that it might be forthcoming at some unspecified point in the future. More importantly, at the hearing, Mr. X was allowed to make a statement and be heard. After this initial placement, the prison committee responsible for inmate housing reconsidered Mr. X's assignment every 60 days. At each of these hearings, Mr. X was given the opportunity to address the committee. These actions constitute sufficient due process in the context of the alleged deprivation.

Mr. X's final claim is that his Eighth Amendment right to be free from cruel and unusual punishment was violated by his placement on "in-house" status. The plaintiff recites numerous hardships that resulted from this placement, including lack of access to television in his cell, lack of access to the commissary, being prohibited from possessing certain items like ballpoint pens and batteries, and being deprived

of outdoor yard privileges for several months. He also complains of the length of his stay in segregation, 26 months in total.

To establish an Eighth Amendment violation, a prisoner must show that the alleged deprivation, viewed objectively, is "sufficiently serious" and that the prison officials' actions, viewed subjectively, demonstrate a "deliberate indifference" to the prisoner's health or safety. Simmons v. Cook, 154 F.3d 805, 807 (8th Cir. 1998). A deprivation is "sufficiently serious" if it denies a prisoner the "minimum civilized measures of life's necessity." Wilson v. Seiter, 501 U.S. 294, 298 (1991) (internal citations omitted). Most of Mr. X's complaints do not rise to this level. For example, ballpoint pens and television are not necessary for a civilized life. Although Mr. X was not allowed to go outside to exercise for three months, he was permitted to use a dayroom with exercise equipment for three hours each week during this time. This amount of exercise does not demonstrate deliberate indifference to the plaintiff's health. While Mr. X was housed in a segregation cell for quite a long time, the deprivations he alleges are not "sufficiently serious" to establish an Eighth Amendment violation.

Accordingly, we affirm.

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.

-6-