WOLLMAN, Circuit Judge.
Following a bench trial on James Gibson’s 42 U.S.C. § 1983 due process claim against Caruthersville School District No. 8 (the District), several District officials, and school board members, the district court awarded Gibson one dollar in nominal damages and ordered the District to complete the termination hearing it had begun “so that Gibson may attempt to clear his name.” In No. 02-2492, Gibson appeals the district court’s finding that he was not entitled to a hearing as to his non-renewal and its failure to award compensatory or punitive damages. In No. 02-2493, the District cross-appeals, contending that the district court erred by concluding that Gibson was entitled to complete the termination hearing on his 1999-2000 teaching contract. In No. 03-1572, the District appeals the award of attorney’s fees to Gibson.
Having consolidated the appeals for purposes of decision, we now affirm in No. 02-2492 and reverse in No. 02-2493, concluding that the District satisfied the requirements of the Due Process Clause with *771 respect to Gibson’s termination and non-renewal. Because Gibson is no longer a prevailing party and thus not entitled to attorney’s fees and costs, we reverse in No. 03-1572.
I.
Gibson was hired by the District as a probationary teacher and coach for the 1997-1998 school year. The District employed Gibson pursuant to a one-year contract that was renewed for the 1998-1999 and the 1999-2000 school years. In November 1999, the District sought to terminate Gibson’s contract after he allegedly assaulted a student. In a letter dated November 22,1999, the District suspended Gibson with pay, alleging that Gibson had “grabbed a student by the throat, pushed him into the wall, and threatened to strike him with [his] fist[, and] ... displayed threatening, intimidating, erratic and/or potentially violent behavior toward and in the presence of District Personnel, manifested by yelling, raised or clenched hands, cursing, rage and other threatening and aggressive gestures.” The letter advised Gibson that he was entitled to a hearing, an attorney, to testify on his own behalf, to present witnesses and documents, to cross-examine witnesses, and to seek judicial review of an adverse decision. The letter further stated that Superintendent Olin Parks would recommend to the board that Gibson be terminated. A second letter dated November 30, 1999, alleged two additional grounds supporting Gibson’s termination: insubordinate behavior in failing to respond to repeated requests for grade sheets, and material misrepresentations on his job application regarding his previous employment.
Pursuant to school board policy, Gibson requested a public hearing, which began on January 18, 2000. The District presented and Gibson cross-examined eight witnesses. Because of the late hour, the hearing was adjourned until February 3, 2000. On February 2, Gibson asked that the hearing be continued until February 24 because of a death in his family. Before the hearing was resumed, Gibson rejected the District’s offer to pay him through the end of the school year, contingent upon his signing a release and agreeing to terminate the hearing. The offer letter stated that Gibson’s teaching contract would not be renewed for the 2000-2001 school year and, because a probationary teacher has no right to such a renewal, the offer likely exceeded what he could receive in a lawsuit. During January and February, the allegations against Gibson were publicized in newspapers and in pamphlets. In addition, news spread through word-of-mouth after several student and staff interviews were conducted. More than 100 people attended each hearing.
Gibson and his attorney met with the District’s attorney immediately prior to the start of the February 24, 2000, continued hearing and were told by him that he was going to recommend that the school board close the hearing during the testimony of two students due to perceived intimidation by other students, members of the community, and Gibson. After objecting to this proposal, Gibson and his attorney met with the two students and their parents and were told that the students were not intimidated and that they were comfortable testifying in the open hearing. Gibson’s attorney related this information to the District’s attorney, who nevertheless maintained his stance that the hearing be closed during the students’ testimony, offering instead to “proceed with the hearing over [Gibson’s] objection, close it for the receipt of testimony from those two witnesses and then have the rest of the hearing open, or we can adjourn the hearing ... while you ... seek a writ of *772 prohibition from our local judge requiring us to have the hearing open for receipt of all the testimony.” Gibson’s attorney then objected to the proposed closure on the record, informing the school board what the student witnesses had told him. Upon learning that the board intended to close the meeting, Gibson’s attorney told the board that he wished to continue the hearing so that he could seek a writ of prohibition in the Circuit Court of Pemiscot County, Missouri, compelling the board to keep open the hearing.
Gibson filed such a petition on March 10. On March 9, however, the school board had met and voted not to renew Gibson’s teaching contract for the following school year, offering as reasons Gibson’s failure to follow district procedures in purchasing equipment and making travel arrangements. Despite these stated reasons, the district court found that the true reason that the board did not renew Gibson’s contract was because it considered him to be insubordinate, volatile, erratic, and potentially abusive to the students. At the end of the school year, the District declared Gibson’s termination hearing moot, as his contract had expired and he had been paid in full for the entire school year. Gibson dismissed his petition for writ of prohibition on July 12, 2000.
II.
In an appeal from a judgment entered following a bench trial, we review the district court’s factual findings for clear error and its conclusions of law de novo. Speer v. City of Wynne, 276 F.3d 980, 984-85 (8th Cir.2002). Gibson contends that the District violated his Fourteenth Amendment right to due process by denying him a hearing concerning his non-renewal and by failing to complete the termination hearing that began on January 18, 2000. We address the two claims together.
“A government employee is entitled to ... due process only when he has been deprived of a constitutionally protected property or liberty interest.” Winegar v. Des Moines Indep. Cmty. Sch. Dist., 20 F.3d 895, 899 (8th Cir.1994). Any claim of a property interest in employment must be grounded in state law. Id. Under Missouri law, “a probationary teacher has a property interest in employment only for the remainder of the school year for which he or she has a contract.” Smith v. King City Sch. Dist., 990 S.W.2d 643, 646 (Mo.Ct.App.1998). Missouri law provides “no right to renewal ... and no property interest in renewal arises.” Id. Although the District’s initiation of termination proceedings during the 1999-2000 school year implicated a property interest in that year’s employment contract, Gibson was never terminated and, in fact, was paid everything that he was due under his 1999-2000 contract. Consequently, neither the District’s failure to complete the termination hearing nor its failure to hold a non-renewal hearing implicated a property interest of which Gibson could not be deprived without due process.
The Due Process Clause protects against deprivations of liberty interests as well as property interests. When a governmental employer makes statements in connection with an employee’s termination or non-renewal that seriously damage the employee’s good name, the employee may be entitled to a due process hearing at which he is given an opportunity to rebut the allegations and clear his name. Shands v. City of Kennett, 993 F.2d 1337, 1347 (8th Cir.1993) (citing Board of Regents of State Colleges v. Roth, 408 U.S. 564, 573-74, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972)).
*773 To establish his entitlement to a “name-clearing hearing,” the aggrieved employee must show that:
1) the public employer’s reasons for the discharge stigmatized the employee by seriously damaging his standing and association in the community or by foreclosing employment opportunities that may otherwise have been available; 2) the public employer made the reason or reasons public; and 3) the employee denied the charges that led to the employee’s firing.
Speer, 276 F.3d at 984. The requisite stigma has been found when the allegations involve “dishonesty, immorality, criminality, racism, or the like.” Waddell v. Forney, 108 F.3d 889, 895 (8th Cir.1997).
The district court found that the school board terminated Gibson because it considered him to be “insubordinate, volatile, erratic, and potentially abusive to the students.” In light of the evidence of Gibson’s subsequent difficulty in finding employment, we agree that the allegations, which included charges that he had assaulted and threatened students, were sufficiently stigmatizing to implicate Gibson’s liberty interests. See Winegar, 20 F.3d at 899 (finding “allegations of unjustified child abuse ... sufficiently stigmatizing to a teacher’s reputation, honor, and good name in the community to implicate liberty interests”). Despite the undisputed evidence that Gibson, not the District, wanted the hearings held in public, the attendance of between 100 and 250 people at the hearings indicates the already widespread knowledge of and interest in the allegations against Gibson. We concluded in Winegar that the publication requirement is satisfied when the allegations are spread as a result of the school district’s investigation. Winegar, 20 F.3d at 899 n. 3. By presenting eight of its witnesses at the public hearing on January 18th, 2000, the District further publicized the allegations against Gibson. Gibson has denied all allegations, save the charge that he made false statements on his job application regarding his employment history. Because Gibson’s non-renewal was based upon the same stigmatizing allegations for which the termination hearing was initiated, his due process right to an opportunity to clear his name arose from both the non-renewal and the incomplete termination hearing.
On February 24, 2000, Gibson received the opportunity to clear his name to which he was entitled under the Fourteenth Amendment. Gibson’s contention that he was given an all-or-nothing choice between closing the remainder of the hearing to the public or going to court to force the school board to hold the entire hearing open to the public is belied by the record. The stipulation of facts entered into by the parties states that “[the District’s attorney] requested the school board to close the hearing for receiving testimony of two students.” This stipulation parallels the testimony of the District’s attorney. Although it would be a very different case had the District presented the bulk of its evidence in a public hearing and then closed that portion of the hearing during which Gibson presented his rebuttal, that is not the situation before us. Gibson was given the opportunity to rebut the allegations in an open meeting, closed only during the time the testimony of the two student witnesses was to be received. The Due Process Clause requires no more. See Coleman v. Reed, 147 F.3d 751, 755 (8th Cir.1998). Although it is a matter of dispute whether the students were in fact intimidated to the point of altering their testimony, we have accorded school officials substantial discretion in matters regarding the safe operation of schools. See Golden v. Anders, 324 F.3d 650, 654 (8th Cir.2003).
*774 Gibson was free to argue in state court that his ability to clear his name depended upon hearing the testimony of the two students in public. He petitioned the appropriate court to do just that. Notably, neither the District nor Gibson suggested the possibility of proceeding with the other witnesses without waiting for a state court ruling regarding the two student witnesses. Until the school year ended, Gibson had a property interest in his employment contract. When the end of the school year arrived, mooting his property interest, Gibson had not yet presented his argument to the state court. After discussing the apparent mootness of his petition with the District, Gibson voluntarily dismissed the petition for writ of prohibition on July 12, 2000. We conclude that because Gibson was given an opportunity to clear his name, an opportunity that he failed to pursue or to preserve when he continued the termination hearing and then did not pursue to conclusion his state court petition, he is entitled to no further relief.
That portion of the judgment which denies a hearing on Gibson’s non-renewal and denies his claim for compensatory and punitive damages is affirmed. That portion of the judgment which awards nominal damages and a name-clearing hearing is reversed, as is the order awarding attorney’s fees, expenses, and costs.