# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 06-3220

_____

| | | |
|---|---|---|
| Jeffrey Dean Poolman, | * | |
| | * | |
| Appellant, | * | |
| | * | |
| v. | * | Appeal from the United States |
| | * | District Court for the |
| City of Grafton, North Dakota; | * | District of North Dakota. |
| Leroy McCann, Chief of Police, in | * | |
| his official capacity; Nicholas B. Hall, | * | |
| City Attorney, in his official capacity; | * | |
| Fred Stark, Mayor, in his official | * | |
| capacity, | * | |
| | * | |
| Appellees. | * | |

_____

Submitted: March 15, 2007
Filed: June 5, 2007

_____

Before WOLLMAN, JOHN R. GIBSON, and MURPHY, Circuit Judges.

_____

WOLLMAN, Circuit Judge.

Jeffrey Dean Poolman appeals from the district court's[1] order granting summary judgment in favor of the defendants – the City of Grafton (City) and various City officials. We affirm.

_____

[1]The Honorable Ralph R. Erickson, United States District Judge for District of North Dakota.

Poolman was a police officer for the City. He rented space in a building he owns to Migrant Health Services (Migrant Health), as well as to a residential tenant, Honorious Gulmatico, who lived in the basement with his girlfriend. Gulmatico had Poolman's permission to host performances by Christian rock bands so long as no drugs, alcohol, or tobacco were brought onto the premises.

On July 8, 2001, one of the performers Gulmatico had been hosting discovered a pinhole camera in a wall in Gulmatico's bathroom. The City police were contacted and, with Gulmatico's consent, they searched the basement. They discovered two wires that ran from the camera to a locked closet that contained various items, including a VCR with a blank videotape.

Early in the morning of July 9, 2001, the police chief, LeRoy McCann, told the City officials about the pinhole camera. McCann later delivered a letter to Poolman informing him that he had been placed on administrative leave. Poolman admitted that he had placed the camera in the bathroom, but explained that someone from Migrant Health had complained of a marijuana-like odor after one of the rock concerts and that he had been trying to discover whether someone was smoking marijuana. That same morning, police executed a search warrant for Poolman's residence, wherein they found a computer, computer equipment, and videotapes. Two of the videotapes had been erased, except for five seconds of footage at the beginning of each tape that appeared to depict a medical examination table. Police also found a safe that contained, among other things, a bag of pills.

Later that day, Poolman told McCann that his safe contained some pills that he had found while on duty. Poolman offered to submit to a drug test. Three tests were administered, all of which registered negative results. Also that day, Poolman told another officer that, while on duty, he had found some pills that field tests indicated

might be methamphetamine or ecstacy. Some of these pills were in a bottle, which Poolman later delivered to the evidence locker. There were also loose pills lying on the street that he placed in a baggie and brought home. Poolman said that he had placed the baggie in his safe so that his children would not find them and that he had forgotten to later put them in the evidence locker. According to later laboratory tests, the pills in question were vitamin C.

On the evening of July 9, 2001, Poolman was charged with Surreptitious Intrusion, a violation of North Dakota Century Code § 12.1-20-12.2. On July 11, 2001, McCann gave Poolman a letter informing him that he had been fired. The letter explained that Poolman had been fired because 1) he had, without his tenant's knowledge, entered the tenant's apartment and placed in the bathroom a pinhole camera that was wired to a VHS recorder, a violation of North Dakota law for which he had been charged; and 2) he had diverted what he believed to be drugs to his personal safe instead of the evidence locker, which was a violation of police procedures relating to conversion of evidence and evidence processing. Two days later, Poolman sent the Mayor a letter signaling his intent to appeal the termination.

Officers later searched Migrant Health and determined that the table in Migrant Health's examination room was similar to the one seen in the videotapes taken from Poolman's safe. Officers noticed a small hole in the room, the placement of which appeared consistent with the angle from which the examination table in the videos had been filmed. They found evidence suggesting that a pinhole camera had been placed in the hole and later removed. Poolman later explained that he had been testing new surveillance equipment and had placed a camera in a pre-existing hole on a Saturday when nobody would be present at Migrant Health.[2]

---

[2]Poolman stated that there was a hole in the examination room because he had run an electronics business in that space and had used a camera for theft-prevention purposes.

On August 13, 2001, Poolman received another letter, explaining that the placement of the pinhole camera at Migrant Health, which violated state law, constituted an additional reason for his termination. Poolman responded with a letter appealing this supplemental notice of termination as well. A hearing on Poolman's appeal was scheduled for September 11, 2001. Poolman was sent a letter describing the evidence the police department planned to present and indicating that the meeting would be a closed to the public unless Poolman advised the city attorney that he wanted an open hearing. Following the hearing, during which witnesses were presented and cross-examined, Poolman's termination was upheld. Poolman was later tried and acquitted of the surreptitious intrusion charges stemming from the placement of the pinhole camera in Gulmatico's bathroom. Poolman was not charged in connection to the placement of the pinhole camera located in the examination room.

Poolman filed this action in federal district court, alleging procedural and substantive due process violations under 42 U.S.C. § 1983, as well as related state-law claims. Poolman contended that the City had improperly deprived him of his property interest in continued employment with the City and that the City had made damaging allegations that deprived him of his liberty interest. The district court granted the City summary judgment on the procedural and substantive due process claims and dismissed Poolman's state-law claims without prejudice.

## II.

Poolman argues that summary judgment was improper because it rested on a disputed material fact, namely, whether Poolman had admitted that his conduct was "wrong."[3] We disagree. First, Poolman does not explain how the disputed fact —

---

[3]It is not clear whether Poolman is arguing that this disputed fact bears on his property interest or liberty interest claim. Although he specifically refers to his liberty interest, his discussion centers on considerations applicable to the property interest claim. Poolman does not contest summary judgment on his substantive due process

whether he had admitted that his conduct was wrong — would be relevant to his contention that he was improperly deprived of his property interest in continued employment. We agree with the City that this disputed fact has no discernible bearing on his property interest claim. Although Poolman does not believe that the aforementioned conduct warranted termination, neither the propriety of the City's decision, nor the adequacy of the procedures by which the City arrived at that decision, turns on whether Poolman considered his actions to be wrong.

Second, this disputed fact does not have any material bearing on Poolman's liberty interest claim. An aggrieved public employee asserting a liberty interest claim based on statements made by his employer must show that: "1) the public employer's reasons for the discharge stigmatized the employee by seriously damaging his standing and association in the community or by foreclosing employment opportunities that may otherwise have been available; 2) the public employer made the reason or reasons public; and 3) the employee denied the charges that led to the employee's firing." Speer v. City of Wynne, 276 F.3d 980, 984 (8th Cir. 2002). The district court concluded that Poolman's liberty interest claim failed because he did not deny the truth of the charges against him.[4] This conclusion is supported by the record. Poolman did not deny placing a pinhole camera in the bathroom without Gulmatico's knowledge or placing a camera in the Migrant Health examination room. Nor did he deny placing items he thought might be drugs in his personal safe. Finally, he did not deny that he had been charged with a crime, which, according to City policies, would

claim.

[4]Poolman appears to misapprehend the meaning of the term "charges" in this context. He argues that the district court may have confused his supposed admission of wrongdoing with an admission of criminal conduct (which he denied). The district court was not confused. "Charges" refers here to allegations of wrongdoing rather than formal accusations of specifically criminal conduct. Taken in this more colloquial sense of the term, it is evident that Poolman did not deny the "charges" against him.

justify his termination. In sum, whether or not Poolman considered his actions wrong, he did not contest the substance of the accusations leveled against him.

Poolman contends also that his post-termination hearing was constitutionally inadequate because the labor relations committee that upheld his termination failed to state explicitly that the accusations against him had been proven by a preponderance of the evidence. Poolman did not bring this alleged infirmity to the attention of the district court, and thus we will not consider it for the first time on appeal. See Orion Fin. Corp. v. Am. Foods Group, Inc., 281 F.3d 733, 740 (8th Cir. 2002).

The judgment is affirmed.

_____