# United States Court of Appeals

### For the Eighth Circuit

_____

No. 18-2663

_____

Albert Ridgell,

*Plaintiff - Appellee,*

v.

City of Pine Bluff, A Public Body Corporate and Politic,

*Defendant - Appellant,*

Debe Hollingsworth, In Her Individual and Official Capacity as Mayor for the
City of Pine Bluff, Arkansas,

*Defendant.*

_____

Appeal from United States District Court
for the Eastern District of Arkansas - Pine Bluff

_____

Submitted: April 18, 2019
Filed: August 29, 2019

_____

Before COLLOTON, GRUENDER, and ERICKSON, Circuit Judges.

_____

COLLOTON, Circuit Judge.

Albert Ridgell sued the City of Pine Bluff and City Mayor Debe Hollingsworth under 42 U.S.C. § 1983, alleging that they discriminated against him based on race in violation of 42 U.S.C. § 1981. A jury returned a verdict in favor of Mayor Hollingsworth but against the City. The City appeals on the ground that once Hollingsworth was adjudged not liable, there was no basis to find the City liable for discrimination. On the record in this case, we agree with the City, and therefore reverse the judgment.

I.

Ridgell, an African-American, was hired in June 2007 to be the City Collector for Pine Bluff. Debe Hollingsworth, a Caucasian woman, won the November 2012 mayoral election and took office in January 2013. Over the next few months, Ridgell failed to meet various deadlines related to the implementation of a new software system in the Collector's office. On July 31, Hollingsworth terminated Ridgell for "unsatisfactory work performance," based on his failure to meet these deadlines.

Ridgell appealed his termination to the eight-member City Council. Six votes were required to override the mayor's action. *See* Ark. Code Ann. § 14-42-110(a)(1). Six members of the Council voted to reinstate Ridgell and two voted to uphold the mayor's decision. One councilman testified that he and the five others who voted to override the mayor's action did so because Ridgell did not have full authority to make the necessary changes to the new software system, and there was a lack of documentation as to what assigned tasks Ridgell had failed to complete.

Ridgell returned to work on August 26. Over the next month, Hollingsworth twice disciplined Ridgell for "unsatisfactory work quality." On September 11, she gave him a written warning after he failed to produce a report that she had requested.

-2-

Two weeks later, Hollingsworth suspended Ridgell for five days based on his continued inability to meet deadlines and his failure to make progress on collecting taxes from delinquent businesses.

On October 15, Ridgell arrived at work at least thirty minutes late. Hollingsworth terminated Ridgell for "insubordination." At trial, Hollingsworth testified that her decision was about more than just Ridgell's tardiness that day; it was based on "the whole picture" of Ridgell's deficient work performance since he had returned to work in August.

Ridgell once again appealed to the City Council, but this time only five members voted to override the mayor's action, and her decision was sustained. The only member to vote differently than the first time was Lloyd Holcomb, who voted to uphold Ridgell's second termination.

Ridgell sued the City and Hollingsworth under 42 U.S.C. § 1983, claiming that they had racially discriminated against him in violation of 42 U.S.C. § 1981. At trial, Ridgell presented evidence of alleged comparator employees. Steve Miller, the Caucasian head of the City's Finance Department, had been disciplined, but not terminated, for failing to comply with one of Hollingsworth's directives, for going to the gym while taking leave under the Family and Medical Leave Act, and for tardiness. Ridgell testified that Robert Tucker, a Caucasian male, regularly arrived late to work but had never been disciplined.

At the conclusion of Ridgell's case-in-chief, the City and Hollingsworth moved for judgment as a matter of law on the claims of race discrimination. The district court denied the motion. At the close of all evidence, the City and Hollingsworth again moved for judgment, and the court took the motion under advisement.

The jury returned a verdict in favor of Hollingsworth but against the City on Ridgell's claims of race discrimination and awarded damages of $24,080. The court dismissed the claim against Hollingsworth, denied the City's pending motion for judgment as a matter of law, and entered judgment for Ridgell against the City in the amount of $24,080.

The City then filed a renewed motion for judgment as a matter of law or, in the alternative, to alter or amend the judgment. *See* Fed. R. Civ. P. 50(b), 59(e). The City made two arguments: first, the verdict in favor of Hollingsworth meant that the City could not be held liable; and second, the evidence failed to establish that an official custom of race discrimination was the moving force behind Ridgell's termination. The district court denied the motion, concluding that the City had forfeited its first argument by failing to raise it previously and that both arguments failed on the merits.

II.

The City argues on appeal that the jury's verdict for Hollingsworth requires judgment in its favor. A municipality can act only through its employees, so a plaintiff seeking damages against a municipality under § 1983, for race discrimination that violated § 1981, must show that a municipal official or employee racially discriminated against him. *See Jett v. Dall. Indep. Sch. Dist.*, 491 U.S. 701, 735-36 (1989); *Russell v. Hennepin County*, 420 F.3d 841, 846 (8th Cir. 2005).

Where a plaintiff seeks damages based on alleged illegal actions of a municipal official, there is no authority to award damages against the municipality when the jury concludes that the official committed no wrong. *City of Los Angeles v. Heller*, 475 U.S. 796, 798-99 (1986) (per curiam). The City argues that once the jury found that Hollingsworth was not liable for discrimination, it necessarily followed that the City could not be liable either.

-4-

Ridgell first argues that the City forfeited this argument by failing to raise it in its two motions for judgment as a matter of law before the case was submitted to the jury. *See* Fed. R. Civ. P. 50(a). Those motions sought judgment for the defendants on the ground that there was insufficient evidence that Hollingsworth discriminated against Ridgell. But the failure to make the present argument in the pre-submission motions was not a forfeiture. Before the jury returned its verdict, there was no reason for the City to argue that a verdict in favor of Hollingsworth dictated a judgment in favor of the City. The pre-submission motions properly focused on whether there was sufficient evidence to support a judgment against Hollingsworth and the City. Once the jury ruled for Hollingsworth, the City's argument that the Hollingsworth verdict required judgment for the City became ripe. At that point, the City timely made the argument in its renewed motion after trial, *see* Fed. R. Civ. P. 50(b), and it is properly before us.

On the merits, Ridgell does not challenge the jury's verdict finding that Hollingsworth was not liable for race discrimination. As to the City's liability, therefore, the appropriate question is "whether a verdict or decision exonerating the individual governmental actor[] can be harmonized with a concomitant verdict or decision imposing liability on the municipal entity." *Speer v. City of Wynne*, 276 F.3d 980, 986 (8th Cir. 2002); *see De Feliciano v. De Jesus*, 873 F.2d 447, 450-52 (1st Cir. 1989). If the two cannot be reconciled, then the City is entitled to judgment as a matter of law.

Ridgell submits that we can reconcile the verdicts by assuming that the jury gave Hollingsworth an undeserved victory. He suggests that there was sufficient evidence to find that Hollingsworth racially discriminated against him, but that the jury simply declined to impose liability on her. The jury, however, was instructed to find for Ridgell if Hollingsworth fired him because of his race, and we presume that the jury followed the instructions. *See Heller*, 475 U.S. at 798-99; *Aspen Skiing Co. v. Aspen Highlands Skiing Corp.*, 472 U.S. 585, 604-05 (1985). The verdict

-5-

establishes as a matter of law that Hollingsworth did not unlawfully discriminate, so the finding against the City cannot be harmonized unless there was race discrimination by some other official or combination of officials.

In *Heller*, the jury's finding that a police officer "inflicted no constitutional injury" was "conclusive" as to the municipality's liability, 475 U.S. at 798-99, because "the theory of municipal liability asserted was entirely dependent on the municipal defendants' responsibility for the officer's alleged unconstitutional acts." *Speer*, 276 F.3d at 986. In *Speer*, however, this court recognized that a plaintiff's theory of municipal liability need not always hinge on the actions of a single official or employee. "[S]ituations may arise where the combined actions of multiple officials or employees may give rise to a . . . violation, supporting municipal liability, but where no one individual's actions are sufficient to establish personal liability for the violation." *Id.* In *Speer*, for example, this court hypothesized a situation in which one official publicized false and defamatory information about an employee, and another official or officials refused the employee an opportunity to clear his name, thus resulting in a deprivation of the employee's liberty interest in his good name and reputation without due process. *Id.* at 986-87.

Ridgell cites *Speer*, but he fails to articulate a coherent theory of what "combined actions" gave rise to an act of racial discrimination against him. The only municipal official or employee whom Ridgell cited to the jury as a wrongdoer was Hollingsworth. Insofar as the case rests entirely on alleged wrongdoing by Hollingsworth, the City is entitled to judgment. The jury's finding that Hollingsworth did not racially discriminate against Ridgell means that the City cannot be held liable based on discrimination by Hollingsworth. *See Heller*, 475 U.S. at 798-99.

The district court concluded, however, that "[t]hings didn't stop with Mayor Hollingsworth." The court observed that the city council ratified the mayor's decision and ruled that a jury reasonably could have concluded that Ridgell's case

-6-

against the City was not entirely dependent on actions by Hollingsworth. At oral argument, Ridgell pointed to Lloyd Holcomb, one of the three members of the City Council who voted against reinstating Ridgell.

Having reviewed the record, we conclude that there was insufficient evidence from which a reasonable jury could have concluded that Holcomb's vote against overriding the mayor's action was based on race. Holcomb voted to override Hollingsworth's first termination of Ridgell because he believed at the time that Ridgell "was in the right." He later met with the City's human resources director and Hollingsworth and learned about the problems with Ridgell's work performance and tardiness. Based on this information, he concluded that Ridgell's second termination was the right decision, and said he had no reason to believe that Hollingsworth's decision was motivated by race. Two other council members voted against reinstatement on *both* occasions, and Ridgell asserts no discrimination by them.

Ridgell pressed Holcomb at trial about Steve Miller, the Caucasian department head who was not terminated despite committing various infractions. Holcomb said he knew that Miller had been disciplined for missing one or two important deadlines, and had been late to work several times, but thought that "Miller was disciplined for being late and he stopped being late." There was no evidence to contradict Holcomb's testimony, and Ridgell presented no other evidence supporting an inference that Holcomb voted against reinstatement because of Ridgell's race.

In sum, Ridgell does not challenge the jury's finding that Hollingsworth did not discriminate against Ridgell based on race. There is insufficient evidence that any other city official, or a combination of Hollingsworth and other municipal officials or employees, discriminated against Ridgell based on race. Because there was no race discrimination in violation of § 1981, the City cannot be held liable for damages under § 1983. *See Jett*, 491 U.S. at 735-36; *Russell*, 420 F.3d at 846. The City is thus

entitled to judgment as a matter of law on Ridgell's claim of race discrimination. *See Heller*, 475 U.S. at 798-99; *De Feliciano*, 873 F.2d at 452.

\*      \*      \*

The judgment of the district court is reversed, and the case is remanded with directions to enter judgment for the City on Ridgell's claim of race discrimination.

_____