# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 03-2828

_____

Jerome Berry,                                    *
                                                 *
        Appellee,                      *
                                                 *   Appeal from the United States
      v.                                 *   District Court for the
                                                 *   Eastern District of Missouri.
Robb Sherman; Roger Rutledge;                    *
Susan Embree; James J. Burgess;                  *
Richard Fongemie, Sgt.,                          *
                                                 *
        Appellants.                    *

_____

Submitted: January 15, 2004

Filed: April 22, 2004

_____

Before BYE, HEANEY, and SMITH, Circuit Judges.

_____

SMITH, Circuit Judge.

Robb Sherman, Roger Rutledge, Susan Embree, Captain James J. Burgess, and Sergeant Richard Fongemie (collectively referred to as "appellants"), all correctional officers at Northeast Correctional Center ("NECC"), appeal the district court's denial of qualified immunity in Jerome Berry's 42 U.S.C. § 1983 claim. We reverse.

## I. *Background*

Berry, an inmate at NECC, sued the named appellants and other defendants[1] claiming that they failed to protect him from attack by other inmates in violation of the Eighth Amendment and that they allegedly violated his right to equal protection under the Fourteenth Amendment. In late 1998, Berry complained to corrections officials that he and his roommate could not get along. In response, the officials moved Berry to Christopher Lewis's cell. Berry and Lewis had not met before they were assigned to the same cell. Berry did not declare Lewis an "enemy" or name him on his "enemies list." As such, Berry did not sign–and he was not offered–an enemy-waiver form.

Shortly after moving into the cell with Lewis, Berry complained to prison officials about Lewis's personal hygiene on January 11, 1999. Grievance officers investigated Berry's complaint and instructed Berry to follow proper procedure and submit a cell-change request.

Each appellant worked with Berry or dealt with his complaints. Sergeant Fongemie investigated Berry's complaints and determined that they were unfounded because, according to Fongemie, "[Berry] was the only offender that complained that offender Christopher Lewis was unsanitary. I had personally observed offender Christopher Lewis cleaning his room and staff and other offenders had not complained that offender Lewis was unsanitary." Sherman also met with Berry to determine if he wanted protective custody. Berry declined the offer.

Rutledge spoke with Berry on several occasions about Berry's preference to cell only with Caucasian offenders and about Berry's complaints that Lewis–who is

---

[1] Berry's complaint named defendants Prudden, Rowley, Sherman, Rutledge, Embree, Burgess, Fongemie, Harris, and Hays.

African American–was unsanitary. Rutledge noted that Berry never indicated that he feared for his safety with Lewis and, in fact, declined protective custody on several occasions. Rutledge also indicated that an enemy waiver was not offered because Berry did not declare Lewis an enemy.

Embree, the caseworker in Berry's housing unit, noted that Berry requested to room with a Caucasian cell mate. Embree indicated that she did not hear Berry tell staff that he believed that his life was in danger or that he wanted protective custody. Finally, Burgess wrote a memo explaining that he was not reassigning Berry to another cell away from Lewis.

In early January 1999, prison officials received a tip that Lewis and two of his friends– Hopkins and Bonner–had threatened another unnamed inmate and that Lewis possessed a homemade knife. Prison officials searched for the knife in Berry's and Lewis's cell, but none was found.

On January 19, 1999, Berry and Lewis fought outside their cell. Hopkins and Bonner joined in the fracas. Berry received minor lacerations to his head. Afterwards, Berry claimed that Lewis and his friends attacked him without provocation. Lewis, however, claimed that he acted in self-defense when Berry exited the cell and attacked him. An inmate witness stated that Hopkins used a knife to assault Berry.

After the fight, Berry appealed the denial of his January 11 grievance. Officials denied Berry's appeal because, after reviewing the investigative report concerning the January 19 fight, the Assistant Director of the Division of Adult Institutions determined:

> I do not find that staff failed to do their job, resulting in the injuries you received. Prior to the incident, your complaint to staff regarding your cellmate's hygiene habits in no way warranted the signing of an enemy

-3-

waiver. Had you felt threatened by your cellmate prior to the assault, then it was your responsibility to immediately advise staff. This, I find, you did not do. NECC staff has reported that you were asked on at least five different occasions, prior to the incident, if you wanted protective custody and that you always said no, that you did not have any complaints with your cellmate other than his hygiene. Further, I find that you are now assigned to the Farmington Correctional Center.

Before the district court, all defendants filed motions for summary judgment claiming qualified immunity and a defense to the equal-protection claim. In an order filed June 9, 2003, the district court granted the motions for summary judgment as to all defendants on the equal-protection claim. On the failure-to-protect claim, however, the district court granted summary judgment for defendants Prudden, Rowley, Harris, and Hays, but not to the appellants. The appellants now appeal the denial of qualified immunity in Berry's failure-to-protect claim.

## II. *Analysis*

We review qualified-immunity entitlement de novo. *Jackson v. Everett*, 140 F.3d 1149, 1151 (8th Cir. 1998). Qualified immunity shields government officials from suit in performance of discretionary functions. However, when an official's conduct violates a clearly established constitutional or statutory right of which a reasonable person would have known, qualified immunity does not prevent suit by the injured party. *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982); *Pagels v. Morrison*, 335 F.3d 736, 739 (8th Cir. 2003). Qualified immunity protects "all but the plainly incompetent or those who knowingly violate the law." *Malley v. Briggs*, 475 U.S. 335, 341 (1986).

Berry argues that the appellants violated his rights clearly established by the Eighth Amendment of the United States Constitution. The Eighth Amendment prohibits the infliction of "cruel and unusual punishments." U.S. Const. amend. VIII. The Amendment requires prison officials to take "reasonable measures to guarantee

the safety of inmates [and] . . . to protect prisoners from violence at the hands of other prisoners." *Farmer v. Brennan*, 511 U.S. 825, 832–833 (1994). A government official violates the Eighth Amendment if he is deliberately indifferent to the need to protect an inmate from a substantial risk of serious harm from other inmates. *Jackson*, 140 F.3d at 1151.

To avoid the appellants' qualified-immunity defense, Berry needed to establish two elements, one objective and the other subjective. Objectively, Berry needed to establish that his continued incarceration with Lewis posed a substantial or pervasive risk of harm. Subjectively, Berry had to establish that the appellants knew of and disregarded a substantial risk of serious harm to him. *Farmer*, 511 U.S. at 833; *Pagels*, 335 F.3d at 740. The more critical inquiry for qualified-immunity purposes is whether it was "objectively legally reasonable" for the prison officials to believe that his conduct did not violate the inmate's clearly established Eighth Amendment right. *Anderson v. Creighton*, 483 U.S. 635, 641 (1987); *Curry v. Crist*, 226 F.3d 974, 977 (8th Cir. 2000).

Consistent with that standard, the Supreme Court observed in *Farmer* that "prison officials who actually knew of a substantial risk to inmate health or safety may be found free from liability if they responded reasonably to the risk, even if the harm ultimately was not averted." 511 U.S. at 844. In this appeal, the appellants argue that Berry failed to establish both elements to bar the qualified-immunity defense.

A. *Substantial Risk of Serious Harm*

Berry first had to show that he was at substantial risk of serious harm. The district court determined that questions of fact remained whether the appellants became aware of an escalating situation days before the fight based upon Lewis's alleged threats to other inmates and the alleged existence of a homemade knife. Based upon our review of the record, we disagree.

The undisputed evidence indicates that no one, including Berry, believed he was at "substantial risk of serious harm." Despite some arguments between Berry and Lewis regarding Lewis's hygiene, no evidence establishes that Berry feared for his safety prior to the fight–in fact, Berry rejected the opportunity for protective custody on numerous occasions. He instead claimed that his only complaint was with Lewis's hygiene. Furthermore, the inmate-reported threat that Lewis had a knife and planned to use it on another inmate did not materialize. The officials investigated by searching Berry's and Lewis's cell. Nothing in the record shows the officials knew or had notice that Lewis planned to attack Berry.

In a case with many common facts, we found qualified immunity applied. In *Falls v. Nesbitt*, 966 F.2d 375, 378 (8th Cir. 1992), the plaintiff, Nesbitt, "failed to put on any evidence which satisfies even the most charitable reading of the notion of a 'pervasive risk of harm.'" The court noted:

> Prior to sharing a cell, Nesbitt did not know inmate Hamm, the inmate who stabbed him, nor did Nesbitt have any reason to fear Hamm. When Nesbitt filled out his housing roster prior to his transfer, his only request was that he not share a cell with a black inmate. Hamm was white. Ironically, in an affidavit executed by Nesbitt on the same day he was stabbed, Nesbitt testified as to his own incredulity at Hamm's violent reaction. Said Nesbitt, "[u]p until that time [the stabbing], I had no reason to believe that inmate Hamm was going to try to kill me."

*Id*. The facts here are similar in that Berry repeatedly rejected the opportunity to claim Lewis as an enemy. The other facts show that any alleged threats made by Lewis were made to or about other inmates, not to or about Berry. Berry himself did not think he was a target. As such, Berry failed to establish that he was at "substantial risk of serious harm."

B. *Knowledge of and Disregard for a*
*Substantial Risk of Serious Harm*

Given our holding that the evidence does not establish that Berry objectively faced a substantial risk of harm, we need not address whether the appellants subjectively acted, or failed to act, with deliberate indifference to Berry's safety.

III. *Conclusion*

For the foregoing reasons, the district court's order denying qualified immunity to the appellants on Berry's failure-to-protect claim is reversed.

_____