NONPRECEDENTIAL DISPOSITION

To be cited only in accordance with
Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Submitted June 23, 2010[*]
Decided June 23, 2010

**Before**

JOHN L. COFFEY, *Circuit Judge*

JOEL M. FLAUM, *Circuit Judge*

DANIEL A. MANION, *Circuit Judge*

No. 08-1726

| | |
|---|---|
| DALE MILLER, | Appeal from the United States District |
| *Plaintiff-Appellant,* | Court for the Central District of Illinois. |
| | |
| *v.* | No. 04-cv-1016 |
| | |
| BRUCE FISHER, Lieutenant, et al., | Harold A. Baker, |
| *Defendants-Appellees.* | *Judge.* |

**O R D E R**

Dale Miller, an Illinois prisoner, sued nine prison employees under 42 U.S.C. § 1983, claiming that they ran afoul of the Constitution when they failed to prevent another prisoner's attack. The district court declined to recruit counsel to represent Miller, so he appeared pro se at trial. At the close of evidence, the court entered judgment as a matter of law against three defendants, and when Miller did not show up in court to present his closing argument, the court dismissed his claims against the remaining six defendants for failure to prosecute. Miller appeals, and we affirm the district court's judgment.

---

[*]After examining the briefs and the record, we have concluded that oral argument is unnecessary. Thus the appeal is submitted on the briefs and the record. *See* FED. R. APP. P. 34(a)(2)(C).

At trial Miller testified to the following facts.  In May 2002, after learning that Frederick Sherman, a fellow prisoner, had written on a prison message board that Miller was a "homosexual," Miller decided to corner Sherman and demand a "retraction."  To get into Sherman's cell, Miller lied to the guard on duty, saying he had left his keys and identification card in Sherman's cell.  Once inside, Miller warned Sherman, "Man, you're going to have to do something about what you did."  Sherman told him to leave the cell and tossed water in his direction to make his point.  When Miller refused to retreat, Sherman picked up his radio and threatened to "bust" Miller's head if he did not leave Sherman's cell; after hesitating briefly, however, instead of injuring Miller, Sherman threw the radio at Miller's feet and bolted out of the cell to escape from him.

But Miller was not finished with Sherman.  He grabbed Sherman's hotplate and "smashed" it on the floor.  He then grabbed Sherman's radio, pursued Sherman to the prison's dayroom, and "smashed" that too.  Still agitated, Miller returned to Sherman's cell, grabbed Sherman's television, and "smashed" it on the dayroom floor as well.  Finally two guards intervened and restrained the two inmates.  As the guards were leading them away, Sherman told Miller, "I am going to get you."  Miller was placed in segregation while prison officials investigated the incident.

The prison allowed inmates to keep an official "enemies list."  But after Sherman's threat "to get" Miller, Miller did not add Sherman to his list, which contained "quite a few" other prisoners, nor did he tell guards that he feared Sherman.  To the contrary, a few days after the incident he asked the prison to assign him to a cell next to Sherman's.  His request was denied, but two months later in July 2002 the prison did assign Sherman to a cell near Miller's.  Two days later Sherman "stomped" and "kicked" Miller.  Although that attack, which is the basis of this lawsuit, drew blood, initially Miller did not complain about it.  He chose to hide his condition from the guards for four days because, he says, he feared being labeled a "stool pigeon."  In September 2002, two months after the attack, Miller finally requested that the prison add Sherman to his "enemies list" but rescinded his request two weeks later, explaining that he was not afraid of Sherman and in fact never had been.

Claiming that the defendants violated the Eighth Amendment by failing to protect him against a substantial risk of Sherman's attack, Miller filed suit and asked the district court to recruit counsel to represent him at trial.  *See* 28 U.S.C. § 1915(e)(1).  The court declined, explaining that the facts and law were not "so complex and intricate that a trained attorney is necessary."  The court added that Miller "appears more than capable of presenting his case."

The case proceeded to trial. At the close of evidence, the defendants moved for judgment as a matter of law. *See* Fed. R. Civ. P. 50(a). The court entered judgment in favor of three guards, reasoning that Miller had not presented evidence that they acted with deliberate indifference to a substantial risk that Sherman would attack Miller, but declined to enter judgment in favor of the remaining six defendants. When Miller did not show up two days later to present his closing argument, however, the court dismissed his claims against these defendants for failure to prosecute. *See* Fed. R. Civ. P. 41(b). Miller then moved to alter or amend the judgment or, in the alternative, to order a new trial. *See* Fed. R. Civ. P. 59. He attached an affidavit explaining that his absence from court was not his fault. He claimed that, on the morning of closing argument, he complained to a prison employee that the handcuffs in the "black box"—a type of restraint in the vehicle used to transport him—had cut off his circulation. In retaliation for his complaint, he asserted, the prison employee refused to take him to the courthouse. The district court denied the motion without explanation.

On appeal Miller argues that the district court erred by entering judgment as a matter of law in favor of the three guards. He says that, given the circumstantial evidence that he put forward, the jury should have been permitted to make the reasonable inference that all defendants were deliberately indifferent to a substantial risk that Sherman would assault him.

We review the defendants' Rule 50 motion de novo; the standard mirrors our appellate analysis of a motion for summary judgment. *Winters v. Fru-Con Inc.*, 498 F.3d 734, 745-46 (7th Cir. 2007). To prevail on his deliberate-indifference claim against any defendant, Miller had to prove both that he suffered a substantial risk of serious harm *and* that the defendant was deliberately indifferent to that risk. *See Farmer v. Brennan*, 511 U.S. 825, 834, 837 (1994); *Santiago v. Walls*, 599 F.3d 749, 756 (7th Cir. 2010). A substantial risk of serious harm means that the risk that Sherman would violently attack him was " 'so great' " that it was " 'almost certain to materialize if nothing [was] done.' " *See Brown v. Budz*, 398 F.3d 904, 911 (7th Cir. 2005); *Billman v. Ind. Dep't of Corr.*, 56 F.3d 785, 788 (7th Cir. 1995).

Miller did not offer sufficient evidence that Sherman was "almost certain" to attack him because Miller's testimony established that *he*, not Sherman, was the violent aggressor. According to Miller, he deceived a guard to access Sherman's cell. Once there, he confronted Sherman, who tried to run away to avoid confrontation and then watched helplessly as Miller destroyed his property. During the encounter, Sherman did threaten to "bust" Miller's head with his radio to entice Miller to retreat, but after hesitating a few seconds, he merely threw the radio at Miller's feet and fled his own cell, leaving Miller unharmed. Miller nonetheless chased Sherman to the prison's dayroom. Even as Miller

retrieved Sherman's possessions from his cell and smashed them one by one on the dayroom floor, Sherman did nothing to defend his property. Only after prison guards stood between the two did he bark, "I am going to get you." Given that Sherman's actual response to Miller's aggression was to flee and not to fight, no reasonable juror could conclude from Sherman's mere words that he was "almost certain" to retaliate against Miller with violence. *Cf. Brown*, 398 F.3d at 911 (finding substantial risk when assailant had long history of particularized violence).

What is more, Miller's testimony established that, when he communicated with prison officials about Sherman, even he did not worry that Sherman would attack him. *See Berry v. Sherman*, 365 F.3d 631, 634-35 (8th Cir. 2004) (explaining that plaintiff's failure to express fear suggests that substantial risk of harm did not exist). He testified that, a few days after the incident in Sherman's cell, he actually requested a cell next to Sherman's. He also left Sherman off his lengthy "enemies list." And even after Sherman "stomped" and "kicked" him, he did not tell prison officials that he needed to be moved to a different cell for his own safety; indeed he later told them that he had never feared Sherman. He also hid his injuries for four days and reported the incident only after a guard spotted his swollen face. *Cf. Young v. Selk*, 508 F.3d 868, 873 (8th Cir. 2007) (explaining that prisoner's immediate request to be separated from threatening cellmate was evidence of substantial risk). On this record, Miller has not furnished sufficient evidence that the defendants were deliberately indifferent to an "almost certain" risk of an attack from Sherman.

Because we hold that Miller offered insufficient evidence of a substantial risk of serious harm, we need not reach his additional argument that the district court abused its discretion by dismissing his claims against six defendants for failure to prosecute; those defendants too were entitled to judgment as a matter of law based on the insufficiency of the evidence. *See* Fed. R. Civ. P. 50(a). Nor need we reach Miller's argument that the district court abused its discretion by declining to recruit counsel to represent him. True, trained counsel may have been able to skillfully cross-examine adverse witnesses and gather evidence to corroborate Miller's story. But because we decide this appeal solely on the basis of, and by accepting, Miller's story about the events underlying his claim, he cannot show "a reasonable likelihood" that the district court's refusal to recruit counsel "would have made a difference in the outcome of the litigation." *See Pruitt v. Mote*, 503 F.3d 647, 659 (7th Cir. 2007) (en banc).

AFFIRMED.