# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

———————

No.  08-3730

———————

Gavin Moyle, by Jessica Repp, his      \*
mother and natural guardian; Jessica    \*
Repp, as trustee for the next-of-kin     \*
of Carl Moyle, deceased,               \*
                                     \*
         Plaintiffs - Appellants,     \*
                                     \*   Appeal from the United States
                                     \*   District Court for the District
     v.                                \*   of Minnesota.
                                     \*
Bruce Anderson, individually and in   \*
his official capacity; Patrick Carr,    \*
individually and in his official capacity; \*
Angela Knutson, individually and in   \*
her official capacity; Brian Frank,    \*
individually and in his official capacity; \*
Cory Schoeck, individually and in his \*
official capacity; Heather Pickett,     \*
individually and in her official capacity; \*
Sherburne County,                 \*
                                     \*
         Defendants - Appellees.    \*

———————

Submitted: June 10, 2009
Filed: July 9, 2009

———————

Before MURPHY, ARNOLD, and GRUENDER, Circuit Judges.

———————

MURPHY, Circuit Judge.

Appellants Gavin Moyle and his trustee, Jessica Repp, brought this action against Sherburne County and several county employees seeking damages for the murder of Carl Moyle, Gavin's father, at the Sherburne County Jail. Appellants asserted three claims: (1) a § 1983 failure to protect claim against the individual defendants; (2) a § 1983 municipal liability claim against the county; and (3) a state law wrongful death claim. The district court[1] granted summary judgment to the individual defendants and to the county, and also dismissed the state law wrongful death claim without prejudice.

On the morning of August 8, 2006 Elk River police arrested Carl Moyle for the gross misdemeanor of no proof of insurance. Moyle was taken to the Sherburne County Jail where he was booked and placed in a cell in the Alpha Intake Unit (AIU) after it was determined that he would be unable to go before a county judge that day.

The same morning Bruce Christenson was transported from Oak Park Heights Prison, the only Class 5 maximum security state prison in Minnesota, to the Sherburne County Jail in anticipation of a proceeding before the county district court the following day. The majority of inmates in Oak Park Heights are designated as posing the highest risk of escape and/or violence, and Christenson was housed in the prison's segregation unit because of his knife attack on a fellow inmate at a different correctional facility in St. Cloud. At the time of that attack, Christenson had been serving a 108 month sentence for first degree aggravated robbery, theft of a motor vehicle, theft, and first degree test refusal. Christenson's scheduled appearance before the state district court was in relation to the second degree assault with a deadly weapon charge arising from the St. Cloud incident.

---

[1]The Honorable Richard H. Kyle, United States District Judge for the District of Minnesota.

Christenson was transported from Oak Park Heights by a Sherburne County transportation deputy. No one from the county had contacted Oak Park Heights to inquire about Christenson's criminal or incarceration history, and no one at Oak Park Heights had notified the county about Christenson's violent tendencies. An employee in the Oak Park Heights records office did testify that while the transportation deputy was in her office, she had made an "offhand" remark that he was "picking up one of our bad boys from seg." The deputy testified that he never heard her statement and that he would have communicated the information to county officials if he had.

When Christenson arrived at the jail, he was booked by a county corrections officer. The booking policy at the time required the officer to ask an arriving inmate several questions, to observe the inmate's demeanor, to review any additional information provided about the inmate, and then to classify the inmate as either high or low risk. If there was no information provided about the inmate's previous history, the policy did not require the officer to seek such information. Incoming inmates classified as low risk, including those transferred from other correctional facilities, were placed in the AIU for a 72 hour observation period, after which their classification was reviewed. If classified as high risk, inmates were placed in a separate housing unit. The booking policy had been written by the jail administrator and the commander in the late 1990's and had subsequently been reviewed by the Minnesota Department of Corrections (DOC) in 2004 and 2006. Following each inspection, the DOC had concluded that the county's booking policy complied with Minnesota rules governing correctional facilities.

The officer responsible for booking Christenson was aware that he had been transported from Oak Park Heights and that he was to be charged with second degree assault. No further details were provided the officer, and the officer did not seek additional information. Thus, the booking officer was unaware that Christenson had been in segregation 23 hours a day at Oak Park Heights, that he had a history of mental illness, and that the assault related to his court appearance had been an unprovoked, violent attack on a fellow inmate. The officer classified Christenson as

low risk, based on the information she had and Christenson's calm, polite demeanor during the booking process.

Pursuant to the county's booking policy, Christenson was then placed in the AIU, a small unit with six cells and an open area. Inmates in the unit were free to come and go from their individual cells. Christenson was placed in a unit adjacent to Moyle's cell. Eight hours later, at approximately 9:00 p.m., Christenson walked into the cell where Moyle was asleep. Using an aluminum handrail he had pulled from the wall of his own cell, Christenson bludgeoned Moyle to death before jail personnel realized what was happening.

Appellants brought this action pursuant to 42 U.S.C. § 1983 and state law against the county and the individual officers involved, alleging that the defendants had failed to provide for Moyle's physical safety, in violation of the Fifth, Eighth, and Fourteenth Amendments. After the defendants moved for summary judgment, the district court ruled that none of the individuals had demonstrated deliberate indifference to Moyle's safety and that appellants could not prevail on their individual § 1983 claims as a result. The court noted that the record was devoid of any evidence of prior incidents where a violent inmate had been placed in the AIU or any general population unit as a result of inadequate information about the inmate's violent tendencies. The court also found significant the DOC's previous inspections and approval of the county's booking policy, concluding that the county could not be held liable under § 1983 without any notice that the county's policies were defective or posed an obvious risk of harm to inmates and without any constitutional violation by the individual defendants. The court declined to exercise jurisdiction over appellants' state law wrongful death claim and dismissed it without prejudice. Appellants appeal only the district court's grant of summary judgment on their municipal liability claim against the county under § 1983.

We review de novo a grant of summary judgment and may affirm on any grounds supported by the record. Bass v. SBC Commc'ns, Inc., 418 F.3d 870, 872

(8th Cir. 2005). Summary judgment is proper when the evidence viewed in the light most favorable to the nonmoving party presents no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fischer v. Andersen Corp., 483 F.3d 553, 556 (8th Cir. 2007).

To establish municipal liability under § 1983, a plaintiff must show that a constitutional violation was committed pursuant to an official custom, policy, or practice of the governmental entity. Monell v. N.Y. Dep't of Soc. Servs., 436 U.S. 658, 690-92 (1978). There are two basic circumstances under which municipal liability will attach: (1) where a particular municipal policy or custom itself violates federal law, or directs an employee to do so; and (2) where a facially lawful municipal policy or custom was adopted with "deliberate indifference" to its known or obvious consequences. Seymour v. City of Des Moines, 519 F.3d 790, 800 (8th Cir. 2008). There need not be a finding that a municipal employee is liable in his or her individual capacity before municipal liability can attach. Speer v. City of Wynne, 276 F.3d 980 (8th Cir. 2002); Parrish v. Luckie, 963 F.2d 201, 207 (8th Cir. 1992) ("A public entity or supervisory official may be held liable under § 1983 even though no government individuals were personally liable."). Where an official policy is itself unconstitutional or directs employees to take unconstitutional action, no evidence beyond a statement of the policy and its exercise is necessary to establish § 1983 liability. Szabla v. City of Brooklyn Park, 486 F.3d 385, 389-90 (8th Cir. 2007).

Appellants assert that the county's booking policy at the time of Moyle's murder was itself unconstitutional and that its exercise was the moving force behind Moyle's death. Their argument centers on two aspects of the booking policy: it directed officers to place incoming inmates in the AIU for 72 hours unless classified as high risk by the booking officer and it did not require officers to seek out additional information about incoming inmates' criminal or incarceration histories before making that classification. To establish that the county's policy was unconstitutional, appellants rely primarily on the Fifth Circuit case of Janes v. Hernandez, 215 F.3d 541 (5th Cir. 2000), in which municipal liability was imposed on a county for failure to

segregate violent inmates from nonviolent inmates. The jail policy in <u>Janes</u> was to house all inmates in a single cell, regardless of their known violent or nonviolent histories. <u>Id.</u> at 542. Only after an inmate became violent towards other inmates was there any reclassification. <u>Id.</u> Moreover, the policy did not permit officers to assist a victim of violence without first obtaining the consent of a superior. <u>Id.</u>

The undisputed facts in this case do not resemble those confronted by the Fifth Circuit in <u>Janes</u>. The county's booking policy did not sanction the placement of violent inmates with nonviolent inmates in the AIU: its policy was that an incoming inmate should be classified as high or low risk after completion of an intake interview. Those designated as high risk were then housed in a separate area of the jail. The county thus intended to segregate violent inmates from nonviolent inmates, and its policy did not prohibit the booking officer from seeking additional information about an inmate beyond that provided by the transferring institution. A policy which does not "affirmatively sanction" unconstitutional action, and which instead relies on the discretion of the municipality's employees, is not an unconstitutional policy. <u>Seymour v. City of Des Moines</u>, 519 F.3d 790, 800 (8th Cir. 2008); <u>Dick v. Watonwan County</u>, 738 F.2d 939, 943 (8th Cir. 1989). The policy of the Sherburne County Jail vested discretion in the booking officer to determine whether additional information about an inmate's criminal or incarceration history was necessary and whether the inmate posed a risk to others and needed to be placed in a separate unit. We conclude that the county's booking policy at the time of Moyle's murder was not itself unconstitutional.

Because the county's policy was facially lawful and did not compel unconstitutional action, appellants have the high burden of proving that the county's decision to maintain the policy was made with deliberate indifference to its known or obvious consequences. <u>Bd. of the County Comm'rs v. Brown</u>, 520 U.S. 397, 407 (1997). The standard for deliberate indifference is objective; a governmental entity is liable if it has maintained "a policy in which the inadequacy is so obvious, and the inadequacy is so likely to result in the violation of constitutional rights" that the

policymakers can be said to have been deliberately indifferent. City of Canton v. Harris, 489 U.S. 378, 390 (1989); Spencer v. Knapheide Truck Equip. Co., 183 F.3d 902, 905-06 (8th Cir. 1999). A showing of simple or even heightened negligence will not suffice. Brown, 520 U.S. at 404.

Appellants assert that the county's booking policy contained inadequate safeguards to protect inmate safety by failing to require officers to seek information about an incoming individual's history for violence prior to classification. Appellants contend that a genuine issue of material fact exists as to whether that inadequacy rises to the level of deliberate indifference. They rely heavily on deposition testimony in which the jail administrator concedes that had the booking officer known the details of Christenson's prior attack on a fellow inmate, he would have been classified as high risk and placed in a separate unit. This testimony reflects the administrator's hindsight assessment of the situation preceding Moyle's death, but it does not support the conclusion that the county failed to adopt adequate safeguards as the result of a "deliberate choice to follow a course of action" in the face of obvious risk to inmate safety. Szabla, 486 F.3d at 390.

Appellants have not offered any evidence that the county had notice of an alleged inadequacy in the booking policy or that the policy's alleged inadequacy was so patently obvious that the county should have known that a constitutional violation was inevitable. Russell v. Hennepin County, 420 F.3d 841, 848 (8th Cir. 2005). There was no evidence that the county had had any prior incidents of violence in the AIU due to the misclassification of inmates, which would have placed the county on notice of deficiencies in its booking policy. To the contrary, the DOC had twice inspected the county's booking and classification policy and on each occasion deemed the policy compliant with the rules governing detention facilities in Minnesota. Given this record, we cannot conclude that the county made a deliberate decision not to require officers to obtain additional information as to the criminal and incarceration histories of incoming inmates in the face of a known or obvious risk to inmate safety.

The facts of this case are undeniably tragic. It may be of limited consolation to appellants that the county has altered its booking policy since Moyle's death to protect the safety of future inmates. The record here just does not support a conclusion that the county maintained its policy in the face of an obvious risk to the constitutional rights of its inmates. Although the actions of the county and its employees in placing Christenson in the AIU might be seen as negligent, appellants have not made out a record of deliberate indifference as required to impose § 1983 liability on the county.

For these reasons we affirm the judgment of the district court.

_____