# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 08-1468

_____

Penny Whitson,      *
     *
         Appellant,      *
     *   Appeal from the United States
     v.      *   District Court for the Western
     *   District of Missouri.
Stone County Jail; Sorrick;      *
Brown; Richard Hill; Quirt Page;      *
Danny Hankins,      *
     *
         Appellees.      *

_____

Submitted: November 19, 2009
Filed: April 22, 2010

_____

Before MELLOY, BEAM, and GRUENDER, Circuit Judges.

_____

BEAM, Circuit Judge.

Penny Whitson appeals the district court's grant of summary judgment in favor of the defendants on her pro se claim for relief under 42 U.S.C. § 1983 alleging that two defendants failed to protect her from a particular assault, and others failed to properly train and supervise the officers responsible for Whitson's safety.[1]  Because

_____

[1]We do not hold Whitson's inartful pleadings or responses against her as she proceeds pro se.  Given that a pro se complaint must be liberally construed, Estelle v. Gamble, 429 U.S. 97, 106 (1976), and "*pro se* litigants are held to a lesser pleading standard than other parties," Federal Express Corp. v. Holowecki, 552 U.S. 389, 402

there remains a question of fact on a determinative issue in this case, and the district court applied the wrong legal standard, we reverse and remand for further proceedings.

## I.    BACKGROUND

Whitson based her claim on the following facts, which we assume to be true under our standard of review:  On December 15, 2005, employees from the Stone County Jail transported prisoners to the Missouri Department of Corrections (DOC). Whitson, a female prisoner, was placed in the prison van with four male prisoners and, although Whitson first attempted to enter the van and sit in the first caged area just behind the transporting officers, she was specifically instructed to sit in the second caged area together with prisoner Richard Leach.  The van was very dark inside.  Each section of the van was caged separately and the back caged area had two bench seats, which at the outset Leach and Whitson occupied separately.  Corporal Shawna Sorrick drove the van, accompanied by Officer Brown, who sat in the front passenger seat. Sorrick and Brown played loud music and the three men in the first caged area were talking loudly.  Whitson contends that during the transport Leach managed to remove his hand restraints, grab her arm, sit her on his lap, pin her against the seat in front of her, pull her pants down and rape her.  Prior to that transport Whitson had no interaction with Leach.  Whitson, embarrassed and humiliated, did not scream and tried to get away from Leach without informing the other inmates.

Whitson did not alert the others in the van when the rape occurred but told Sorrick at a restroom stop that she had been assaulted.  Sorrick did not acknowledge Whitson's complaint.  Faced with Sorrick's indifference, Whitson waited until she

---

(2008), we do not find any omission on Whitson's part determinative at this stage. She is, however, represented by counsel on appeal.

reached the DOC, where she again reported the rape to the authorities. After making her claim at DOC, Whitson ultimately was sent to a hospital where tests confirmed the presence of "motile sperm" in Whitson's vagina.

The district court granted summary judgment in favor of the defendants, holding that because the attack was a complete surprise to even Whitson herself, the defendants necessarily lacked the required knowledge of a substantial risk of harm sufficient to support a claim under § 1983. And, having determined that the defendants' actions did not constitute a failure to protect, the defendants likewise did not violate plaintiff's clearly established constitutional rights and were entitled to qualified immunity. The district court did not specifically address Whitson's failure-to-train/supervisory claims in its order granting summary judgment. Whitson appeals.

## II.    DISCUSSION

We review a grant of summary judgment de novo. Moyle v. Anderson, 571 F.3d 814, 817 (8th Cir. 2009). "Summary judgment is proper when the evidence viewed in the light most favorable to the nonmoving party presents no genuine issue of material fact and the moving party is entitled to judgment as a matter of law." Id.

### A.    Constitutional Violation and Qualified Immunity

Because being subjected to violent assault is not "'part of the penalty that criminal offenders [must] pay for their offenses,'" Farmer v. Brennan, 511 U.S. 825, 834 (1994) (quoting Rhodes v. Chapman, 452 U.S. 337, 347 (1981)), "[t]he Eighth Amendment imposes a duty on the part of prison officials to protect prisoners from violence at the hands of other prisoners." Perkins v. Grimes, 161 F.3d 1127, 1129 (8th Cir. 1998). Prison officials must "take reasonable measures to guarantee the safety of the inmates." Farmer, 511 U.S. at 832 (quotation omitted). However, "[i]t is not . . . every injury suffered by one prisoner at the hands of another that translates

into constitutional liability for prison officials responsible for the victim's safety." Id. at 834. "In order to establish an Eighth Amendment failure-to-protect claim, a plaintiff must show that the prison official was deliberately indifferent to a 'substantial risk of serious harm.'" Young v. Selk, 508 F.3d 868, 872 (8th Cir. 2007) (quoting Farmer, 511 U.S. at 828). In doing so, a prisoner must satisfy two requirements, one objective and one subjective. The first requirement tests whether, viewed objectively, the deprivation of rights was sufficiently serious; i.e., whether the inmate "is incarcerated under conditions posing a substantial risk of serious harm." Farmer, 511 U.S. at 834. The second requirement is subjective and requires that the inmate prove that the prison official had a "sufficiently culpable state of mind." Id. (quotation omitted). In prison conditions claims, which include the failure-to-protect allegations before us, the subjective inquiry regarding an official's state of mind is one of "'deliberate indifference' to inmate health or safety." Id. (quoting Wilson v. Seiter, 501 U.S. 294, 302-03 (1991)). An official is deliberately indifferent if he or she actually knows of a substantial risk and fails to respond reasonably. Id. at 837, 844-45.

The biggest quandary in this case is that both the defendants and the district court fixated on Whitson's state of mind as to whether Leach would assault her that morning–a fact that is mostly irrelevant to our analysis. For example, in its determination as to whether an Eighth Amendment violation occurred at all, the district court concluded that defendants' actions did not constitute a failure to protect because the defendants lacked the required knowledge of a substantial risk of serious harm. In doing so, the court adopted the defendants' argument that "[i]n order to prevail in this case, plaintiff must show that she placed defendants on notice of a specific threat to her, and that they failed to take appropriate measures to protect her from the risk of attack." The district court gave decisive weight to *Whitson's* subjective knowledge as to whether this attack would occur, stating that because Whitson first reported the rape about an hour after it occurred, and testified that the incident was a complete surprise to her, "the defendants . . . lacked the required

-4-

knowledge of a substantial risk."[2] But, Whitson's failure to give advance notice of the unanticipated rape is inconclusive as to the defendants' subjective knowledge. A prison official may not "escape liability for deliberate indifference by showing that, while he was aware of an obvious, substantial risk to inmate safety, he did not know that the complainant was especially likely to be assaulted by the specific prisoner who eventually committed the assault." Id. at 843.

On appeal, defendants attempt to capitalize on the district court's untoward conclusion, arguing again that because Whitson had no prior interaction with Leach, had no idea that Leach might try to sexually assault her, and did not protest the decision to place her in the back of the van with Leach, the officers had no more reason to suspect any harm to Whitson than Whitson did herself. Stated another way, the defendants have claimed throughout these proceedings that because Whitson did not give them notice of a potential risk from Leach, they are not liable. This misstates the law.

They also point to Whitson's deposition testimony where she testified that *she* was not aware of any other individual who had complained about Leach's conduct and use that fact to claim "there was no history of complaints about Richard Leach, nor were there other female inmates who were allegedly raped by other male inmates during a prison transport." Interestingly, while the latter quoted statement might be relevant to an analysis, it is not a "substantive risk" circumstance supported by evidence. The *only* evidence in this record regarding knowledge of any kind has to do with Whitson's knowledge regarding this specific attack or the officers' after-the-fact and limited knowledge as to whether Leach and Whitson had any problems with each other at a prior time. As noted above, this evidence is virtually irrelevant to the analysis we conduct today and is insufficient to support a ruling in the defendants

---

[2]But, affirmation of this almost precise legal formulation by the United States Court of Appeals for the Seventh Circuit was summarily rejected by the Supreme Court in Farmer, 511 U.S. at 831-32.

favor on a motion for summary judgment. Krein v. Norris, 309 F.3d 487, 491-92 (8th Cir. 2002) (affirming the denial of a motion for summary judgment wherein the defendants relied upon their lack of knowledge of a "surprise attack" for dismissal of a plaintiff's deliberate indifference claim). The defendants have simply not established an absence of a genuine issue of material fact, which, as the moving party, is their burden. Moyle, 571 F.3d at 817.

Turning to a credible analysis, then, we first note that the objective inquiry as to whether the risk of assault was sufficiently serious for Eighth Amendment purposes is not before us. The district court made no finding whatever on this first element of the Eighth Amendment analysis. Given the facts advanced, however–inaccessibility of the rear cage, lack of visual contact with the victim and the aggressor by the remotely located supervisor, Leach's inadequate restraints, an overarching noise level and an almost total lack of supervision or observation during transport–it is virtually certain that the objective requirement is met in this case. Even so, we recognize that we cannot make this a fact-specific determination at this time, but the district court will be able to do so (and should do so) upon remand.

We now evaluate the subjective requirements of an Eighth Amendment violation. The district court, as earlier stated, gave conclusive weight to Whitson's failure to notify the defendants of a risk of harm. This failure to notify, however, has little to do with a correct conclusion. The pivotal issue in this regard deals with whether the defendants had a sufficiently culpable state of mind. Assuming the truth of her allegations, as we must, Whitson has sufficiently stated a "deliberate indifference" claim. Whitson "may establish [defendants'] awareness by reliance on any relevant evidence." Farmer, 511 U.S. at 848. She claims that this rape was foreseeable: two inmates of the opposite sex were isolated and placed next to each other in the back of a dark van; there was loud music; and the officers did not adequately observe, nor were they particularly concerned about, the nefarious goings-on in the second caged compartment, which was accessible only from the rear of the

-6-

vehicle. Whitson alleges that by failing to provide adequate attention to security during transfers of this nature where male and female inmates are placed in a remote compartment where the safety, security and welfare of the female inmate were not and could not be adequately maintained, the defendants were deliberately indifferent to a risk of harm to her. This claim does not arise from Leach's attack per se, but arises from Whitson's "allegation that defendants were deliberately indifferent to a known substantial risk that such an attack would occur." Krein, 309 F.3d at 491. Thus, a factfinder could (and Whitson says should) conclude that the situation in which Whitson was placed demonstrated deliberate indifference to a substantial risk to her safety.

The evidence offered by the defendants does not refute the viability of this claim. Id. at 492. The affidavits offered by the defendants in support of their motion are indeed curious when it comes to the issue of subjective knowledge. Each emanation is conspicuously limited to statements regarding what Whitson did or did not say or know the morning of the alleged assault. Corporal Sorrick's affidavit states that Whitson did not complain about any of the male inmates being transported with her, that Whitson did not claim that she was afraid of being attacked by one of the inmates being transported that morning, that Whitson never complained during the assault that Leach was assaulting her, Whitson did not ask to be seated away from Leach after the van stopped for a break, and ultimately, never claimed she had been sexually assaulted. The remaining three affidavits of the individuals who were not present during the transport, but who are being sued for their failure to supervise, are also limited in scope and contain identical statements that Whitson had never voiced a complaint about Leach, and no other inmate in the jail or deputies in the Sheriff's Department had voiced any problems between Whitson and Leach particularly. There is no affidavit in the record from Officer Brown, the second officer traveling in the passenger seat the morning this transfer took place.

The defendants place themselves firmly within the myopic view that what Whitson knew the morning of the attack is crucial and they refuse to budge from this limited scope. This is fatal to their case, at least at this stage of the proceedings. What Whitson knew about Leach, while not wholly irrelevant, is nearly so, as it is only one piece of circumstantial evidence relevant in the quest to determine whether the defendants had subjective knowledge of the overall risk, which is an element of Whitson's Eighth Amendment claim. If Whitson *had* complained about Leach prior to the transport, that evidence would obviously be relevant to the inquiry regarding the officers' state of mind. That she had *not*, however, is not conclusive of the issue. Merely relying on the fact that these officials could not have guessed beforehand that Leach might attack Whitson does not warrant a summary judgment ruling in their favor. Farmer, 511 U.S. at 843-44; Krein, 309 F.3d at 491 ("The Supreme Court [has] made clear . . . that, in order to have a viable deliberate indifference claim, a plaintiff is *not* required to allege and prove that the defendant or defendants specifically knew about or anticipated the precise source of the harm . . . .").

"Whether a prison official had the requisite knowledge of a substantial risk is a question of fact subject to demonstration in the usual ways, including inference from circumstantial evidence . . . . " Farmer, 511 U.S. at 842. There is a myriad of evidence that could be adduced in this case. In the face of Whitson's allegations, the defendants could respond that they knew that placing Whitson and Leach in this particular situation created a substantial risk to inmate safety and health but that they acted reasonably in the face of that risk, even if harm was ultimately not averted in this case. Id. at 844-45. In that same vein, it remains open for the defendants to prove that even if this risk appears obvious, the defendants "did not know of the underlying facts indicating a sufficiently substantial danger and that they were therefore unaware of a danger, or that they knew the underlying facts but believed (albeit unsoundly) that

the risk to which the facts gave rise was insubstantial or nonexistent." Id. at 844.[3]
For example, it could be relevant whether *these officers* or their supervisors (not just
Whitson) knew of any other inmates, male or female, that had made complaints about
Leach prior to this transport. Leach's criminal history, or lack thereof, could also be
relevant; or, possibly, Leach's behavior in a variety of prison situations might have put
these officers on notice that placing him in a locked compartment with a female
prisoner created a substantial risk of harm or, on the flip side, was likely innocuous.[4]
Additionally, it might be relevant whether male and female inmates were routinely
transferred together without incident, or maybe that a particular protocol is used to
accommodate such transports, and whether such protocol was actually followed that
morning. Id. at 843-45 (discussing examples of the myriad of relevant evidence
defendants might offer in the face of a sufficient allegation that the defendant-official

---

[3]This is not to say that just because a risk is obvious, such an inference is
conclusive. "[I]t is true that constructive knowledge, or the 'should-have-known'
standard, is not sufficient to support a finding of deliberate indifference . . . . " Spruce
v. Sargent, 149 F.3d 783, 786 (8th Cir. 1998). But, as part of a subjective analysis "a
factfinder may conclude that a prison official knew of a substantial risk from the very
fact that the risk was obvious." Farmer, 511 U.S. at 842. "Therefore, if a plaintiff
presents evidence of 'very obvious and blatant circumstances' indicating that the
defendant knew the risk existed, the jury may properly infer that the official *must* have
known." Spruce, 149 F.3d at 786 (emphasis in original).

[4]Surprisingly, the defense baldly argues that "the record is devoid of any facts
that would suggest that [Leach's] criminal history placed him in a category of persons
who had a greater propensity to commit sexual assaults against women. . . . [and thus]
[t]he record conclusively established that there was no evidence he posed a risk to any
person, let alone to Whitson." It is circular and disingenuous for the defendants to fail
to put in the summary judgment record facts that are uniquely in their possession and
then attempt to persuade the court that there is no genuine issue of material fact on the
subject. If Leach's actual criminal history was such that it would have had no effect
on the officers' decision to place Leach in the remote, locked compartment with
Whitson during the transfer (which we acknowledge is possible), then the defendants
could have and should have placed that evidence in the record.

had knowledge of a risk). Merely claiming that *Whitson* did not know, however, is not enough. At bottom, regardless of what evidence is adduced, the evidence at present does not conclusively establish that the prison officials lacked the requisite mental state sufficient to satisfy summary judgment.

It has been posited that a remand in this case necessarily requires establishing precedent that the placement of male and female inmates together during transfers constitutes a substantial risk of harm in and of itself. This is not so. It is not just the gender difference that forms the basis of any potential risk of harm here. Given these particular allegations, and the absence of any facts to the contrary or facts that might provide a clearer context, there is sufficient circumstantial evidence to create an issue of fact as to whether the officers had knowledge of the constitutionally infirm condition.

The defendants cite two cases in support of the proposition that gender difference, alone, has been rejected as a basis to prove knowledge of a substantial risk. However, in each of the cases, the gender difference at issue existed between a female inmate who was assaulted by a male jailer. Barney v. Pulsipher, 143 F.3d 1299, 1310-11 (10th Cir. 1998) (refusing to find that the defendants knew of a substantial risk of assault based on the proposition that every male guard is a risk to the bodily integrity of a female inmate whenever the two are left alone because in the record there was no evidence of sexual misconduct in the offending jailer's background nor was there evidence of previous incidents of sexual misconduct by jailers generally); Hovater v. Robinson, 1 F.3d 1063, 1066-68 (10th Cir. 1993) (same). We, too, could scarcely hold as a matter of course that every male guard is a risk to the bodily integrity of a female inmate whenever the two are left alone. Absent evidence to the contrary, we assume that jailers will not violate models of social decorum or otherwise commit a punishable offense. We cannot make the same assumption with inmates, as evidenced in Farmer. Between two inmates, "[h]aving incarcerated persons with demonstrated proclivities for antisocial criminal, and often violent, conduct, having stripped them

of virtually every means of self-protection and foreclosed their access to outside aid, the government and its officials are not free to let the state of nature take its course." Farmer, 511 U.S. at 833 (internal quotation omitted).

In the end, the basis for the district court's ruling has been rejected by the Supreme Court and this record does not clearly establish the defendants' entitlement to judgment as a matter of law on the issue of their subjective knowledge. We do not resolve the ultimate issue of whether Whitson can prevail on her § 1983 claims. We are remanding so that the district court can apply the proper test. We simply hold that, assuming the truth of plaintiff's substantiated assertions, she has sufficiently *alleged* a deliberate indifference claim, and the defendants' lack of knowledge that the particular attack would occur does not extinguish the legal existence of her claim. Krein, 309 F.3d at 492. Because the disposition of this case was fundamentally flawed, remand is the proper course. Hand in hand with this conclusion, we likewise reverse the district court's grant of qualified immunity as it was premised on the court's ruling that there was no constitutional violation.

## B.     Failure to Train/Supervisory Liability

Finally, we address the district court's disposition of Whitson's § 1983 claims against defendants Hill, Page, and Hankins for their failure to properly supervise and train Sorrick and Brown. Although the district court entered summary judgment in favor of these defendants, the court never mentions Whitson's particular claims against them. We assume that the court based its dismissal on resolution of these claims against Whitson since the court issued a final, appealable order. On this record, the district court may very well have been correct in its ruling on this issue, although it is unclear. In a § 1983 case, an official "is only liable for his . . . own misconduct" and is not "accountable for the misdeeds of [his] agents" under a theory such as respondeat superior or supervisor liability. Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009). These defendants are thus liable only if they personally displayed deliberate

-11-

indifference to the risk that Whitson would be assaulted during the transfer. However, it is impossible for us to evaluate the district court's decision without any discussion at all on the subject by the court. As such, the district court should take it up on remand and explain its underlying rationale.

## III.   CONCLUSION

Upon our de novo review, we reverse and remand for further consideration.

_____