# United States Court of Appeals

## For the Eighth Circuit

_____

No. 13-2262

_____

Vincent Fitzgerald Walls

*Plaintiff - Appellant*

v.

Dave Tadman, Unit Manager Iowa State Penitentiary; Randy Van Wye; Bill Sperfslage, Deputy Warden at Iowa State Penitentiary; Deb Nichols, Security Director at Iowa State Penitentiary; Nick Ludwick, Warden at Iowa State Penitentiary; Brent Gansey; Greg Colvin, Activity specialist at Iowa State Penitentiary; Harvey Huffman, Prison Guard at Iowa State Penitentiary; Shane Milligan

*Defendants - Appellees*

_____

Appeal from United States District Court
for the Southern District of Iowa - Des Moines

_____

Submitted: April 14, 2014
Filed: August 8, 2014

_____

Before SMITH, COLLOTON, and GRUENDER, Circuit Judges.

_____

SMITH, Circuit Judge.

Vincent Walls was attacked three times by fellow inmates over the course of about a year and a half while incarcerated in the Iowa State Penitentiary (ISP). The

first two attacks came at the hands of Raymond Stallings; the third came from Jaymie Voyles, an alleged prison associate of Stallings. After each attack, Walls was disciplined for fighting. Walls sued prison officials Dave Tadman, Randy VanWye, and Deb Nichols (collectively, "defendants"), claiming that they violated his Eighth Amendment right against the infliction of cruel and unusual punishment when they failed to protect him from those attacks. After a bench trial, the district court[1] granted judgment in favor of the defendants. We affirm.

## I. *Background*

Walls was serving a special life sentence for third-degree sexual abuse at the ISP, a maximum-security facility. The defendants are employees of the ISP. Tadman is a Unit Manager. VanWye is an investigator and handled the investigations of the three fights involved in this case. Nichols is the Security Director.

Iowa Department of Corrections policy provides that upon arriving at a correctional facility inmates have "the opportunity to name other offenders (enemies) who may potentially pose a risk to the offender" while housed in the facility. If problems arise while an inmate is incarcerated, he can report that enemy situation "at any time" by contacting a prison official or submitting a written memo called a "kite." Inmates may also bring concerns, including enemy situations, to prison officials at monthly meetings with the prison's classification committee.[2] Walls did not report any potential enemy situations upon arrival or while incarcerated at the ISP.

---

[1]The Honorable Celeste F. Bremer, Chief United States Magistrate Judge for the Southern District of Iowa, presiding by consent of the parties pursuant to 28 U.S.C. § 636(c).

[2]The classification committee meets once a month to address inmate concerns. Walls testified that the committee included Tadman, a counselor for the inmate, the psychological staff, and a law enforcement lieutenant. The officers who escort inmates to the meeting are also present.

For reported enemy situations, the ISP classification committee determines whether to assign an "enemy code" to the inmates, and if so, which code to apply. There are four such codes: A, B, C, and D. Code A is the highest-risk coding and "implies that the offenders should not be housed in the same facility." Code B applies to enemies that "the offender or others state should not come into contact" and is generally "based solely on the word of the offender or other unsubstantiated or uncorroborated information." Code B enemies may be housed together. Code C describes enemies who "state that their differences no longer cause them to be enemies," but whom staff feel require monitoring. It is used "temporarily to evaluate the offenders' claim that they should not be classified as enemies." Code D is reserved for "situational events or short-term hostility," but it requires "close[ ] evaluat[ion]" of contact between the offenders.

In January 2010, Walls began having trouble with another ISP inmate, Raymond Stallings. According to Walls, this stemmed from Walls's prior membership in the Vice Lords gang.[3] Despite being familiar with the reporting system, Walls did not report any potential problems to prison officials. According to Walls, he believed officials might gossip about his concerns, which would lead to further conflicts.

On January 23, 2010, Stallings attacked Walls near the shower with a shank (homemade knife). Walls claims that he disarmed Stallings, kept the shank, and returned to his cell. The following day, he reported the incident and gave the shank to one of the prison guards. Walls was then asked if he wanted protective custody. He declined. Nevertheless, prison officials placed Walls in involuntary protective custody. Walls then asked to be released. Tadman warned Walls that a return to the general prison population would involve some interaction with Stallings and asked

---

[3]Walls was from Chicago, Illinois; Stallings from Davenport, Iowa. Walls stated that "the guys in Davenport were having trouble with the people from Chicago."

if that would present a problem, or if Walls might have an enemy situation. Walls said no. Walls instead requested a transfer to another prison; however, because of his history of disciplinary issues and his status as a maximum-security prisoner, no other prison would take him.

On March 2, 2010, VanWye interviewed Walls about the fight. Walls again requested a transfer. VanWye also interviewed Stallings; Stallings denied that there had ever been a fight or a shank. VanWye prepared a disciplinary notice that recounted both the fight and the fact that Walls reported it. Both inmates were sanctioned with thirty days of disciplinary detention and the loss of thirty days of earned-time credits. Before returning to the general population after disciplinary detention, Walls and Stallings were both interviewed about potential conflict. Both denied the existence of any further problems.

On July 16, 2010, Stallings jogged towards Walls in the prison yard (in violation of prison rules) and began punching him. Walls and Stallings exchanged blows, but correctional officers separated the two within a few seconds. Walls was again sanctioned with thirty days of disciplinary detention and the loss of thirty days of earned-time credits. Following this fight, Walls and Stallings were coded as Code C enemies.

Almost a year later, on July 8, 2011, a fight broke out between Walls and inmate Jaymie Voyles. According to Walls, Voyles acted at Stallings's behest. Correctional officers again broke up the fight quickly and Walls was not injured. Walls was again sanctioned with thirty days of disciplinary detention and the loss of thirty days of earned-time credits.

Walls filed a federal lawsuit alleging that prison officials violated his Eighth Amendment rights by failing to protect him from the assaults from Stallings and Voyles. After a bench trial, the district court found no constitutional violation. The

-4-

court found that "Walls provided no evidence that a reasonable prison official would believe that Walls' continued incarceration at ISP, when viewed objectively, posed a substantial risk of harm." The court further found that prison officials did not respond unreasonably to whatever risk of harm existed. According to the court, where prison officials investigate a potential problem and both parties deny that any such problem exists, officials cannot be found to have responded unreasonably. Accordingly, prison officials did not display deliberate indifference to any risk of harm that Walls faced. The court denied all requested relief.

## II. *Discussion*

On appeal, Walls asserts that the defendants violated his Eighth Amendment rights by failing to protect him from violence at the hands of other inmates. The Eighth Amendment prohibits the government from inflicting "cruel and unusual punishments." U.S. Const. amend. VIII. This amendment can be violated by serious misconduct of prison officials responsible for the safety of incarcerated persons. Walls contends that he was incarcerated under conditions that posed a substantial risk of harm, namely that he had been labeled a "snitch" for reporting that Stallings had attacked him.[4] Walls claims at various points in his brief that the defendants "failed to take any steps to protect Walls" and "took no long-term steps to protect Walls," and therefore displayed deliberate indifference to the risk of harm that he faced from being labeled a "snitch."

"After a bench trial, we review for clear error the district court's findings of fact and we review de novo the district court's legal conclusions." *Lenz v. Wade*, 490 F.3d 991, 994 (8th Cir. 2007) (citations omitted).

---

[4]On appeal, Wall does not argue that prison officials violated his Eighth Amendment rights with respect to Stallings's first attack.

"In order to establish an Eighth Amendment failure-to-protect claim, a plaintiff must show that the prison official was deliberately indifferent to a 'substantial risk of serious harm.'" *Young v. Selk*, 508 F.3d 868, 872 (8th Cir. 2007) (quoting *Farmer* [*v. Brennan*], 511 U.S. [825,] 828, 114 S. Ct. 1970 [(1994)]). In doing so, a prisoner must satisfy two requirements, one objective and one subjective. The first requirement tests whether, viewed objectively, the deprivation of rights was sufficiently serious; i.e., whether the inmate "is incarcerated under conditions posing a substantial risk of serious harm." *Farmer*, 511 U.S. at 834, 114 S. Ct. 1970. The second requirement is subjective and requires that the inmate prove that the prison official had a "sufficiently culpable state of mind." *Id.* (quotation omitted). In prison conditions claims, which include the failure-to-protect allegations before us, the subjective inquiry regarding an official's state of mind is one of "'deliberate indifference' to inmate health or safety." *Id.* (quoting *Wilson v. Seiter*, 501 U.S. 294, 302–03, 111 S. Ct. 2321, 115 L. Ed. 2d 271 (1991)). An official is deliberately indifferent if he or she actually knows of a substantial risk and fails to respond reasonably. *Id.* at 837, 844–45, 114 S. Ct. 1970.

*Whitson v. Stone Cnty. Jail*, 602 F.3d 920, 923 (8th Cir. 2010).

The subjective inquiry "requires that the official was both aware of facts from which the inference could be drawn that a substantial risk of harm existed, and he must also draw the inference." *Norman v. Schuetzle*, 585 F.3d 1097, 1104 (8th Cir. 2009) (quotations, citations, and alteration omitted).[5] However, "prison officials who actually knew of a substantial risk to inmate health or safety may be found free from liability if they responded reasonably to the risk, even if the harm ultimately was not

---

[5]A citation in an unpublished decision from this court alerted the reader that *Norman* was overruled on other grounds by *Pearson v. Callahan*, 555 U.S. 223 (2009). *See McCrary v. Baldwin*, 500 Fed. Appx. 551, 551–52 (8th Cir. 2013). The Supreme Court decided *Pearson* in January 2009, nearly ten months before we decided *Norman*. Consequently, *Pearson* could not have overruled *Norman*.

averted." *Farmer*, 511 U.S. at 844 (1994). "[P]rison officials who act reasonably cannot be found liable under the Cruel and Unusual Punishments Clause." *Id.* at 845.

Assuming *arguendo* that Walls faced a substantial risk of harm from being labeled a "snitch" and that prison officials were aware of that risk, Walls has not demonstrated that prison officials responded unreasonably. Consequently, Walls has not demonstrated that prison officials violated his Eighth Amendment rights.

After the first attack, prison officials offered Walls protective custody. He declined the offer. When prison officials placed him in protective custody *anyway*, Walls asked to be returned to the general population, fully aware that it would bring him into contact with Stallings. Prison officials asked Walls if he wanted to report an enemy situation with Stallings. Walls declined. Prison officials interviewed both Walls and Stallings. Both inmates told officials that they expected no further problems. Walls did not report an enemy situation with Voyles because, in his words, he had "[n]o reason" to do so. At no point did Walls ask for protection, and he declined protection when it was offered. Walls fails on this record to even show negligence—much less deliberate indifference. *See Blades v. Schuetzle*, 302 F.3d 801, 804 (8th Cir. 2002) (holding that an inmate's own statements that a prisoner posed no risk to him would bar his failure-to-protect claim); *Jackson v. Everett*, 140 F.3d 1149, 1152 (8th Cir. 1998) (finding no deliberate indifference where the prison warden "promptly investigated [a threatened prisoner attack], and the two persons with direct knowledge of the alleged problem denied its existence.").

Walls repeatedly denied the existence of any potential problems. He now asks this court to find an Eighth Amendment violation in prison officials' decision to believe him. We decline.

### III. *Conclusion*

Accordingly, the judgment of the district court is affirmed.

_____