Cite as 2019 Ark. 274

# SUPREME COURT OF ARKANSAS

**No.** CV–17–235

| | | |
|---|---|---|
| | | **Opinion Delivered:** October 10, 2019 |
| REGINALD R. EARLY | | |
| | APPELLANT | APPEAL FROM THE JEFFERSON COUNTY CIRCUIT COURT [NO. 35CV-10-279] |
| V. | | |
| KEITH CROCKETT, CLAYBORN CARROLL, ROBERTA LEWIS, AND LAMON MAYO | | HONORABLE JODI RAINES DENNIS, JUDGE |
| | APPELLEES | AFFIRMED. |

**SHAWN A. WOMACK, Associate Justice**

Appellant Reginald Early, an inmate in the Arkansas Department of Correction (ADC), appeals an order from the Jefferson County Circuit Court granting summary judgment to Appellees Keith Crockett, Clayborn Carroll, Roberta Lewis, and Lamon Mayo. For reversal, Early argues that the circuit court erred in granting summary judgment on his civil-rights claim. We affirm.

I. *Facts*

This court provided a full recitation of the facts in *Early v. Crockett*, 2014 Ark. 278, 436 S.W.3d 141. Early had filed a failure-to-protect action against Appellees, as employees of the ADC, stemming from an attack by Fred Hogan, a general population inmate, in the shower area at the Tucker Maximum Security Unit. In his complaint, Early brought causes of action under 42 U.S.C. section 1983, the Eighth Amendment to the United States

Constitution, and Arkansas law. The circuit court granted summary judgment in favor of Appellees on the basis of qualified immunity. In *Early I*, we affirmed in part and reversed in part. We remanded for the circuit court to consider Early's section 1983 claim under the federal standard of deliberate indifference to determine whether Appellees were entitled to qualified immunity in their individual capacities.

On remand, the circuit court considered Early's section 1983 claims under the deliberate-indifference standard. The court noted that Early presented no proof to support his claim that Appellees were deliberately indifferent to his safety. Thus, the circuit court concluded that Appellees were entitled to qualified immunity and granted their motion for summary judgment. Early now brings this appeal.[1]

## II. *Appointment of Counsel*

For his first point on appeal, Early argues that the circuit court committed procedural error by dismissing his section 1983 claim without making a ruling on his renewed motions for the appointment of counsel. In criminal cases, the accused has a constitutional right to counsel at trial. There is no corresponding right to counsel in a postconviction proceeding, or in a civil action. *See Nelson v. Redfield Lithograph Printing*, 728 F.2d 1003 (8th Cir. 1984); *Virgin v. Lockhart*, 288 Ark. 92, 702 S.W.2d 9 (1986).

Citing *McElyea v. Babbitt*, 833 F.2d 196 (9th Cir. 1987), and *Brown-Bey v. United States*, 720 F.2d 467 (7th Cir. 1983), Early argues that the circuit court's failure to rule on

---

[1]In *Early I*, among his various contentions, Early brought a claim for cruel and unusual punishment in violation of article 2, section 9 of the Arkansas Constitution. This court did not dispose of Early's claim under the Arkansas Constitution in that appeal. In this appeal, it appears Early raises solely his section 1983 claim. All claims raised below but not argued on appeal are considered abandoned. *See Decay v. State*, 2013 Ark. 185.

his request for appointment of counsel before granting summary judgment was an abuse of discretion. However, *McElyea* is distinguishable because the court also found that summary judgment was inappropriate due to the existence of a genuine issue of material fact. 833 F.2d at 198. In *Brown-Bey*, while the court did find there was an abuse of discretion by the circuit court for failing to rule on the motion to appoint counsel, it also held that the error was harmless by the clear lack of merit in the appellant's case. 720 F.2d at 471; *see also Taylor v. Dickel*, 293 F.3d 427 (8th Cir. 2002). In the present appeal, even if the circuit court had abused its discretion by failing to rule on Early's request for counsel, his claims are without merit, as discussed below, and thus any error on this point is rendered harmless.

### III.  *Exhaustion of Administrative Remedies*

Early next argues that the circuit court erred in dismissing his claim against Appellee Lewis after finding he had not exhausted his available administrative remedies. Specifically, Early argues that he did not learn of Lewis's identity until well after the time limit provided for filing a grievance.

Pursuant to the Prison Litigation Reform Act of 1995 (PLRA), prisoners are barred from bringing an action under section 1983 until all available administrative remedies have been exhausted. 42 U.S.C. § 1997e. The PLRA mandates administrative exhaustion *before* an inmate files suit and the plaintiff is required to file a proper grievance against *all* defendants. *See Jones v. Norris*, 310 F.3d 610, 612 (8th Cir. 2002). The doctrine of exhaustion of administrative remedies provides that no one is entitled to judicial relief for a supposed injury until the prescribed statutory remedy has been exhausted. *See Ark. Prof'l Bail Bondsman Lic. Bd. v. Frawley*, 350 Ark. 444, 450, 88 S.W.3d 418, 421 (2002). In *Booth v.*

3

*Churner*, 532 U.S. 731, 739, 741 (2001), the Supreme Court held that courts have no discretion in excusing exhaustion. The failure to exhaust administrative remedies is grounds for dismissal. *Douglas v. City of Cabot*, 347 Ark. 1, 59 S.W.3d 430 (2001). The rationale for the exhaustion requirement is to allow prison officials the time and opportunity to review and address complaints internally before the prisoner is allowed to initiate a federal section 1983 claim. *Porter v. Nussle*, 534 U.S. 516, 525 (2002).

The ADC grievance procedure was the administrative mechanism for the resolution of complaints and identification of problem areas in effect when the attack on Early occurred. The procedure is a two-step policy. Step one of the policy instructs an inmate to file an informal resolution if he believes he has been wronged. If he is not satisfied with the response to the informal resolution, he may proceed to step two of the policy process, which includes the filing of a formal grievance. Upon filing a grievance, an inmate must receive a response from the warden, or his designee, within twenty working days. After receiving a response, if the inmate is not satisfied with the decision, the inmate shall appeal within five days to the appropriate director.

Following the surprise attack, Early submitted and exhausted two grievances regarding the March 19, 2009, incident. In the first grievance, Early identified Appellee Carroll and alleged that Carroll was deliberately indifferent to his safety. In his second grievance, Early identified Appellees Mayo and Crockett as having failed to protect him from attack by another inmate. Both grievances were exhausted on November 24, 2009. Early did not exhaust his administrative remedies in regard to Appellee Lewis, as he never submitted any grievance identifying Lewis's alleged improper actions. Early argues he never

4

submitted a grievance against Lewis because he was unaware of her name, but nothing in the ADC grievance policy prohibits an inmate from filing a grievance when they are unsure of the name of ADC personnel against whom they wish to complain. Early could still have filed a grievance listing Lewis's improper conduct. Further, because we conclude Lewis is entitled to qualified immunity in the subsequent section, this point is moot.

IV. *Individual-Capacities Claim Under 42 U.S.C. § 1983*

On his final point on appeal, Early argues that on remand the circuit court erred in granting summary judgment on his section 1983 claim against Appellees in their individual capacities. Early alleges Appellees were deliberately indifferent to his safety and therefore not entitled to immunity.

The Eighth Amendment prohibits the infliction of cruel and unusual punishment. U.S. Const. amend. VIII. Prison officials are required under the Eighth Amendment to take reasonable measures to guarantee the safety of inmates, and they have a duty to protect prisoners from violence at the hands of other prisoners. *Farmer v. Brennan*, 511 U.S. 825, 832–33 (1994).

Appellees, as state employees, are protected by qualified immunity. *See* Ark. Code Ann. § 19-10-305 (Supp. 2017). State employees' qualified immunity extends to section 1983 claims. *See Robinson v. Langdon*, 333 Ark. 662, 670, 970 S.W.2d 292, 296 (1998). Under the standard of qualified immunity, a government official will be entitled to immunity so long as his actions do not violate a clearly established statutory constitutional right of which a reasonable person would have known. *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). In order to establish an Eighth Amendment failure-to-protect claim and thereby

5

strip Appellees of their qualified immunity, Early must demonstrate that Appellees were deliberately indifferent to a substantial risk of serious harm from other inmates. *See Berry v. Sherman*, 365 F.3d 631 (8th Cir. 2004). To show prison officials acted with deliberate indifference, the relevant inquiries are (1) whether a substantial risk to the inmate's health or safety existed; and (2) whether the officials had knowledge of the substantial risk to the inmate's health or safety, but nevertheless disregarded it. *Farmer*, 511 U.S. at 834. No liability will attach unless the official knows of and disregards an excessive risk to inmate health and safety. *Walton v. Dawson*, 752 F.3d 1109, 1117 (8th Cir. 2014).

To satisfy the first prong in the deliberate-indifference analysis, Early alleges that Appellees failed to follow ADC policy requiring that administratively segregated inmates be kept separate from general population inmates, which in turn created a substantial risk to his health and safety. Yet Early puts forth no evidence to establish that the condition of his incarceration posed a substantial risk of serious harm. It was Early's misbehavior that led ADC to place him in administrative segregation where additional attention is given to protect general population inmates from inmates such as him.

In regard to the second prong, nothing in the record provides evidence of any previous incidents between Early and Hogan that should have alerted ADC personnel to a potential risk to Early's safety. Early himself admits that he had no specific knowledge of a risk posed by Hogan. The Eighth Circuit has said that qualified immunity is appropriate for prison officials when an Eighth Amendment failure-to-protect claim arises from inmate injuries resulting from a surprise attack by another inmate. *See Tucker v. Evans*, 276 F.3d 999 (8th Cir. 2002).

Early relies on *Whitson v. Stone County Jail*, 602 F.3d 920 (8th Cir. 2010), to argue that Appellees remain liable for his injuries even though they were unaware of any risk posed by Hogan. In *Whitson*, the court found that where there was an obvious, substantial risk to inmate safety, prison officials could have been held liable even if they were unaware that the complainant was especially likely to be assaulted by the specific prisoner who committed the assault. *Id.* at 924. In the present case, if there was an obvious risk known to Appellees, it was the risk administratively segregated inmates—such as Early—pose to general population inmates, not the other way around, as Early argues. Constructive knowledge, or the "should-have-known" standard, as Early appears to argue in this case, is not sufficient to support a finding of deliberate indifference. *See id.* at 926. Because Early does not demonstrate that Appellees had any prior knowledge of the risk Hogan posed to Early, the circuit court did not err in granting summary judgment in favor of Appellees.

Affirmed.

Special Justice MARK WANKUM joins.

HART, J., dissents.

WYNNE, J., not participating.

**JOSEPHINE LINKER HART, Justice, dissenting.** I dissent. The evidence in the record supports Early's claim that prison officials bound him in handcuffs and began strip-searching him without bothering to clear the other inmates from the room or take any other precautions sufficient to prevent a known violent inmate from walking right up to Early and assaulting him. By disposing of Early's 42 U.S.C. § 1983 claim on the merits without first addressing any of his several motions for appointment of counsel, the circuit court

abused its discretion. Contrary to the majority's conclusions, I cannot resolve this abuse of discretion as harmless error.

Federal courts have held that it is an abuse of discretion to dispose of a 42 U.S.C. § 1983 claim on the merits without first addressing a pending request by the petitioner for appointment of counsel. *McElyea v. Babbit*, 833 F.2d 196, 199 (9th Cir. 1987) (per curiam); *Brown-Bey v. United States*, 720 F.2d 467, 471 (7th Cir. 1983). The majority acknowledges as much, but nonetheless affirms. The majority rules that any error was harmless, concluding that Early has failed to support or otherwise demonstrate the merits of his deliberate-indifference argument necessary to defeat the defendants' qualified immunity. The majority goes so far as to imply that it was Early's own fault that he was placed in such a vulnerable position.

However, the proper legal question at the summary-judgment stage is whether "the state of the evidence as portrayed by the pleadings, affidavits, discovery responses, and admission[s] on file is such that the nonmoving party is not entitled to a day in court, i.e., when there is not any genuine remaining issue of fact and the moving party is entitled to judgment as a matter of law." *Flentje v. First Nat'l Bank of Wynne*, 340 Ark. 563, 570, 11 S.W.3d 531, 536 (2000). In addressing a case like the one before us, it is important to remember that "[b]eing violently assaulted in prison is simply not part of the penalty that criminal offenders pay for their offenses against society." *Farmer v. Brennan*, 511 U.S. 825, 834 (1994).

Here, Early is arguing deliberate indifference. When addressing whether prison officials acted with deliberate indifference, the relevant inquiries are (1) whether a substantial risk to the inmate's health or safety existed and (2) whether the officials had knowledge of the substantial risk to the inmate's health or safety, but nevertheless disregarded it. *Farmer*, 511 U.S. at 834–38. Early has produced written reprimands that ADC issued to Sergeants Mayo, Lewis, and Crockett in response to the assault against Early, and this documentation tends to establish questions of fact as to both of the deliberate-indifference elements. (E.g., "[I]t is the mission of the department to provide a safe, humane environment for inmates and staff, however, your actions was [sic] not in line with this mission." Captain Davis's 5-26-2009 letter to Sergeant Crockett).

Moreover, Early's difficulties obtaining evidence from the defendants through the discovery process was one of the specific reasons he was filing motions for appointment of counsel in the first place. Early contends that there are policies, procedures, and other information that would further support his argument that the defendants acted with deliberate indifference. The record shows that he requested this evidence from the defendants through the discovery process and that the defendants, alleging security concerns, refused to produce that evidence in response to his discovery requests. The assistance of counsel could have been significant here, either in contesting the defendants' refusal to comply with Early's discovery requests (e.g., with a motion to compel) or in negotiating an alternative resolution (e.g., reviewing the evidence pursuant to the terms of an agreed protective order). Excusing the circuit court's refusal to address Early's motion for

9

appointment of counsel on the basis that he otherwise fails to demonstrate the merits of his case, therefore, seems inconsistent and unfair.

It is the prison officials who placed Early in such a vulnerable position. They directed the other inmates into the shower area, and then without removing those inmates, they brought Early, handcuffed, into the shower area to be strip searched, apparently where all could watch. The prison officials were at least neglectful enough that one of those inmates left in the shower area could have gone right up to Early as he was being strip searched and physically assaulted him. To say that no jury of fair-minded Arkansans could agree that this was a remediable violation of Early's rights is simply inapposite.

I dissent.

*Reginald R. Early*, pro se appellant.

*Leslie Rutledge*, Att'y Gen., by: *Gary Sullivan*, Ass't Att'y Gen., for appellee.